STATE, EX REL. THOMAS SULLIVAN ET AL., RELATORS, V. W. L. ROSS ET AL., RESPONDENTS.

FILED OCTOBER 22, 1908. No. 15,490.

1. **Drains:** COUNTY BOARD: POWERS. An order of a county board establishing a ditch and ordering the construction thereof is an exercise of legislative or administrative discretion, and is not judicial in its nature.

2. ———: ———: ———. Where no rights have accrued in consequence of such order, and no proceedings have been taken thereunder except the employment of an engineer and a portion of the preliminary work of surveying being done by him, it is within the power and discretion of the county board, upon a petition being presented to it for that purpose, to reconsider its former action, to find that the proposed ditch is not for the public welfare, and to revoke and set aside its former order establishing the ditch.

3. ———: LIABILITY OF PETITIONERS. The petitioners for the establishment of the ditch cannot be held liable upon their bond for an expense incurred by the employment of such engineer.

ORIGINAL application for a writ of mandamus to compel respondents to set a day and grant a hearing on the report of the engineer on the establishment of a drainage ditch, and to proceed with its construction. Demurrer to writ. *Sustained.*

*R. E. Evans* and *John V. Pearson,* for relators.

*F. S. Berry, William P. Warner, Jepson & Jepson* and *M. C. Tyler, contra.*

LETTON, J.

This is a mandamus proceeding brought to compel the county clerk and the board of county commissioners of Dakota county to set a day and to give a hearing on the report of the engineer on the establishment and construction of a drainage ditch in that county, and to proceed with the improvement. To the application for the writ a demurrer was filed, and the cause was argued and submitted upon the issue of law thereby raised.

A brief statement of the facts alleged in the petition is as follows: On the 5th day of August, 1905, a petition was filed with the board of county commissioners of Dakota county, praying for the establishment of a drainage ditch, accompanied by a proper bond which was duly approved by the county clerk. On the 7th of August, 1905, the county board proceeded to view the line of the proposed ditch, calling to their assistance a competent engineer. While so engaged, they and the engineer were enjoined by the district court for Dakota county from further proceeding. The injunction continued in force till October 23, 1905, when it was dissolved by the court. On the 9th of December, 1905, an entry was made upon the commissioner's record reciting the filing of the petition and bond, the view made of the premises, and the report made by the civil engineer; and the board found, in substance, that all the jurisdictional prerequisites had been complied with, and that the improvement was necessary, and "will be conducive to the public health, convenience and welfare." On the same day objections were filed to the proposed ditch, and at the regular session of the board the report of the engineer called to their assistance for a view was approved and adopted as the report of the board upon the matter. The objections of the remonstrators to the proceedings were overruled, one Martin Holmvig was appointed surveyor and engineer, and was ordered to go upon the line of the ditch and to make a report as required by the statute, and the ditch was or-

dered located and constructed. The remonstrators severally appealed from this order to the district court. On the 27th day of May, 1907, the last appeal was dismissed. The engineer went upon the line for the purpose of surveying and establishing the levels, but was delayed by the pendency of the appeals. A change in the personnel of the county board took place, and at a meeting of the board held upon March 2, 1907, a petition was presented to it setting forth that the proposed ditch will not be conducive to the public health, convenience or welfare, and that the route proposed and the proposed change in the channel of Elk creek is not the best route or the most practical, and praying that the board reconsider and rescind all action theretofore taken concerning the establishment of the ditch. On the same day, at a regular session of the board, a hearing was had upon the petition, the board set aside the orders and findings theretofore made, and, the original petition coming on again for consideration, the board disallowed and refused to grant the same, and the petition and application were dismissed. On August 20, 1907, Holmvig filed his report as engineer and surveyor substantially as required by the statute. It is further alleged that the larger part of the work incident to the location and surveying of the ditch had been completed at an expense approximating $1,200 prior to the date of the reconsideration and had become a charge upon the lands; that the county board refused to pay the same, and by the reconsideration are attempting to charge the relators on their bond therefor; that the county clerk refused to fix a day for a hearing of the report of the engineer or give notice according to the statute, and that the members of the board refuse to proceed with the improvement and to meet at the office of the county clerk at a time to be fixed by him and perform the duties required of them.

A number of questions were argued and are presented by the briefs, but the one that lies at the threshold of the inquiry and which must first be determined is as to the power of the board to reconsider and rescind the order

establishing and locating the ditch. It is the contention of the relator that the county board had no authority to reconsider or vacate this order; that the attempted vacation is a nullity, and that the duty to proceed with the construction of the ditch still continues; that the power to set aside orders or judgments does not inhere in courts or boards of limited jurisdiction, and such power is not incident to the jurisdiction of such tribunals or bodies; that, as a general principle, a board of supervisors has no power to reverse, vacate or modify its own judicial action; and, without reference to whether the board's act is judicial or otherwise, certain powers conferred upon such boards are not continuous in their nature, but are exhausted by a single exercise, and cannot therefore be rescinded in the absence of fraud or imposition.

It is further argued that the powers exercised by county boards are of two kinds or classes, general and special; that general powers are such as treat generally of the county board and their authority, or relating generally to the county, and that special powers are such as are given in a statute relating to particular subjects, and that, even where the right to reconsider has been conferred upon a board by statute, it has been held that it did not extend to the reconsideration of actions taken under a power specially conferred; that the county board being a creature of the statute can only exercise such powers as are conferred upon them, and since the legislature gave the power to establish drains, and did not expressly give the power to revoke, vacate or modify an order made in the exercise of such power, the authority to reconsider does not exist.

The respondents hold that the action of the board in ordering the establishment of the ditch was legislative and administrative in character, was not subject to appeal; that the order is subject to the discretion of the board to vacate or set the same aside at any time before the letting of the contract for the construction of the ditch or the assessment of lands to pay for the same; and that the action

of the board in setting aside the order was made with full authority, and is legal and binding in all respects.

. Counsel have with commendable industry cited us to many cases bearing upon the question whether boards of like nature or·powers to the board of county commissioners have power to reconsider and rescind their action taken at the same or at a former meeting. These questions have arisen in an almost inconceivable variety of circumstances, but the conclusion we draw from an examination of the authorities is that the determination of the question in each case has depended upon the view that the particular court takes as to the nature or function of the act performed by the board in making the order. Where the act of the board is held to be judicial in its nature or involving the exercise of a judicial function, such courts hold that the order made ·is final and conclusive, and is not subject to reconsideration or rescission by the board. On the other hand, where the courts hold such acts to be legislative or administrative in character, it is held that the discretion of the board to modify, vacate or set aside such orders continues until such time as the rights of third parties have intervened, when they become irrevocable.

Perhaps the supreme court of no other state occupies so decided a position in holding that many of the orders of county boards are judicial in their nature as does that of the state of Indiana. The following cases from that state clearly show the difference between the view that court entertains as to the nature of the acts of such boards in the establishment of highways and acts of like nature and the view heretofore taken by this court. In the case of *Plew v. Jones,* 165 Ind. 21, the facts were that within 30 days after a ditch had been ordered established and constructed certain parties appeared before the board and filed a motion to dismiss the proceedings, for the reason that the petition was not signed by freeholders as required by law. At the same time other parties appeared and represented to the board that they had originally

signed a paper which was annexed to the petition, but
which was apparently lost, and asked leave to sign the
original petition as a substitute or amended petition. The
request was granted, and the objectors appealed.    The
court held that, when the board made the final order for
the establishment and construction of the ditch, its juris-
diction over the matter was at an end, and it had no
power at a subsequent term *"to vacate that judgment"*
and annul the proceedings theretofore taken.    In another
case in that state the facts were that a county seat had
been established and public buildings erected in compli-
ance with law, but the board of county commissioners re-
fused to cause the removal of the county officers and the
courts to the new county seat.    Mandamus proceedings
were brought by a taxpayer of the county to compel the
removal.    The statute required such removal as soon as
the buildings at the new site were completed.    The court
held that, under such a statute, there was an imperative
duty resting upon the board concerning which they had
no discretion, and there was a right vested in each citizen
and taxpayer of the county to have the removal made.
The court further held that although the board had, upon
petition charging fraud in the petition for the original
change of site, had a hearing upon a proper notice, and
had found the charges to be true and thereupon set aside
and vacated its previous order relocating the county seat,
this was no defense; that the statute gave it power to
make the order of relocation after notice and hearing, but
conferred no power to set the same aside, and, therefore,
its last order was a nullity. *Board of Commissioners v.
State*, 61 Ind. 75.    It is also held in Indiana that, where a
board of county commissioners entered an order approv-
ing the report of highway viewers that a proposed high-
way should not be opened, it had no power to set the same
aside and appoint other viewers in the same proceedings,
that it had exhausted its jurisdiction in the matter, and
that new proceedings must be begun in order to give them
power to act; the court saying: "In rendering the judg-

ment, it exhausted the power with which the law had invested it, and it had no right to afterwards attempt to resume authority over the proceedings which the judgment had terminated." *Doctor v. Hartman*, 74 Ind. 221. A like view was taken in *Hanna v. Board of Commissioners*, 29 Ind. 170, with regard to an order establishing a poor farm where the land had been purchased. See, also, *Board of Commissioners v. Logansport & Rock Creek Gravel Road Co.*, 88 Ind. 199; *Kyle v. Board of Commissioners*, 94 Ind. 115. These cases show that in Indiana an order establishing a highway and an order establishing a ditch are both regarded as judicial acts and for that reason not subject to reconsideration, and that the act of the board in locating a county seat or establishing a poor farm is regarded as the exercise of a power specially granted, which, being once exercised, is exhausted. In that state if a party is aggrieved by a final judgment or order of a board of commissioners, if the judgment or order is of a judicial character, he is provided with a remedy by appeal. And, carrying out the idea of judicial action, in that state all such orders are appealable.

But in Indiana it is also held that, where a board of county commissioners has entered an order for the construction of a bridge which it is authorized by the statute to erect, it has the discretion to build it or not, as it may see fit, and cannot be compelled by mandamus to carry the order into effect. The petition alleged that upon a proper petition the board made an order that a bridge be erected; that it appointed engineers to make a survey and estimate on the location and bridge, and to prepare plans for the piers and abutments, and to file their report with the county auditor, all of which was done and the report accepted and adopted by the board; that it appointed a superintendent to advertise for bids and superintend the work; that after the contract had been let for the abutments and the contractors had performed work of the value of $60, the commissioners removed the superintendent, and refused to pay for the building of the bridge.

The court say: "If entering an order to construct a bridge across a stream at a particular place were confessedly a judicial proceeding, the case would be relieved of some of its difficulties, for it is settled that, when a board of commissioners, in such a proceeding, has once entered an order, it has no power to set such order aside. *Board of Commissioners v. State*, 61 Ind. 75; *Doctor v. Hartman*, 74 Ind. 221. But entering such order is not in the nature of a judicial proceeding. There are no adversary parties, and no notice is required. Until such bridge is constructed no one can be said to have any pecuniary interest in such order. It is a mere preliminary step, having in view a public improvement, which the board of commissioners may or may not in its discretion make. To hold that the board may not, after taking such preliminary step, recede from it, would be most disastrous to the public interest. * * * In our opinion the appellee had a discretion to build or not to build the bridge described in the complaint, and having such discretion it was not in the power of the courts to control the same. *State v. Board*, 119 Ind. 444." *State v. Board of Commissioners*, 125 Ind. 247. It will be seen that the supreme court of Indiana has taken a different view as to the nature of acts establishing a highway from that which this court has taken. We have repeatedly held that the act of a county board in locating or establishing a road is an exercise of its administrative or legislative power, and that from its discretion exercised in that behalf there is no appeal. *Howard v. Board of Supervisors*, 54 Neb. 443; *Otto v. Conroy*, 76 Neb. 517. We are inclined to think that the better reason and the greater weight of authority accords with the view that such acts are legislative in their character, and not judicial. The holdings in a few illustrative cases follow: In *State v. Board of Park Commissioners*, 100 Minn. 150, it was held that the power to lay out, open, vacate or abandon public highways is legislative, to be exercised by the legislature or by municipal boards to which it is delegated, and that a municipality has no

power to enter into contracts which curtail or prohibit an exercise of this power whenever public interests demand. This was a case where a strip of land along a street had been granted to the park commissioners of Minneapolis in consideration of the relief of the grantors from special assessments for the improvement of the avenue. Some years afterwards a resolution was passed by the board vacating the avenue as one of the parkways of the city, and this proceeding was brought to compel the board to resume control of the avenue and to maintain the same as a parkway. The court say that, if the relator has been damaged by reason of contractual rights by the vacation, an action for damages will afford him adequate relief, and this is the exclusive remedy; Judge Lewis dissenting.

In Kansas it is held that, after a city has constructed a sewer or drain for the purpose of carrying off surface water, it may in its discretion wholly abandon or discontinue the same and never make further use of it. The court say: "Cities may often make mistakes in the first instance, in constructing drains. And when they do, it would seem that they should have the power to correct their mistakes, and therefore that they should always have the power to change and alter drains; that they should always have the power of abandoning or discontinuing certain drains and building others." *City of Atchison v. Challiss,* 9 Kan. 603. See, also, *Higgins v. Curtis,* 39 Kan. 283.

In Maryland it is held that an ordinance giving a street railway company the right to lay double track upon certain streets may be repealed and the right limited to the use of a single track. In the opinion the court say: "It is perfectly well settled that a municipal corporation has a right to abandon any public improvement, and repeal at its pleasure any ordinance providing for the same; and property owners cannot compel it to take and pay for property condemned for such purpose. The right of repeal is unquestionable, but if in the exercise of this un-

State v. Ross.

doubted right injury is inflicted upon the property holder, he can recover damages by action at law. It has even been held that an unreasonable delay in repealing the ordinance will give a cause of action if injury ensue; or an unreasonable delay by the city in determining whether it would take the property condemned." *Lake Roland E. R. Co. v. Mayor,* 77 Md. 352, 20 L. R. A. 126.

In Vermont it is held that a town at one meeting may rescind its vote at a prior meeting to aid in the construction of a railroad by subscribing to its capital stock when no rights of third parties have vested and nothing has been done under the vote, citing two Vermont cases which held that a town may change its purpose, and, unless some right has been acquired or has vested under its action, no one may complain of the change. *Estey v. Starr,* 56 Vt. 690.

In Ohio, where the legislature by special act authorized county commissioners to levy a tax and build a bridge, and the commissioners levied a tax which produced a small portion of the money necessary, and the commissioners refused to make any further levy and abandoned the intention of building the bridge, a mandamus to compel further action was refused because "the law 'specially enjoins' no such duty upon the county commissioners— the duty to persist in a work deemed useless and injurious." *State v. Commissioners,* 31 Ohio St. 211.

The language of our statute is the same as that of Ohio, that the writ may be issued to any board "to compel the performance of an act which the law specially enjoins as a duty resulting from an office, trust, or station." Code, sec. 645.

In Iowa it is held that a county board has power to reconsider at a subsequent meeting its action at a former meeting, ordering the construction of a bridge; that the order was not judicial in its nature, though it required the exercise of a discretion, saying: "It was their duty as supervisors to act for the best interests of the people of the county, and they could acquire no rights as super-

visors which can defeat the performance of that duty."
*Supervisors v. Horton*, 75 Ia. 271. *City Council of Augusta v. Sweeney*, 44 Ga. 463, 9 Am. Rep. 172; *Mayor v. State*, 30 N. J. Law, 521; *Stoddard v. Gilman*, 22 Vt. 568; *McConoughey v. Jackson*, 101 Cal. 265, 40 Am. St. Rep. 53; 1 Dillon, Municipal Corporations (4th ed.), secs. 290, 311, 314. Judge Dillon's language is as follows: "At any time before the *rights of third persons* have vested, a council or other corporate body may, if consistent with its charter and rules of action, *rescind previous votes and orders.*" See, also, 2 Abbott, Municipal Corporations, secs. 548-550; 1 Smith, Municipal Corporations, sec. 309, to the same effect.

In *Dodge County v. Acom*, 61 Neb. 376, it is said with regard to appeals from an order establishing a drainage ditch: "The exercise of this power is not judicial. The finding and conclusions of the board, to whom the legislature has given authority to act in the manner prescribed, are final and conclusive as to the necessity of the proposed ditch, and that the public health, convenience or welfare will be promoted thereby, and can not thereafter be made the subject of a controversy as to whether correct and well founded or not. It is the exercise of a delegated power, political or administrative in character, conferred upon the county board by the sovereign authority of the state acting through its legislative branch of government. *Lynch v. Forbes*, 161 Mass. 302; *In re Cooper*, 28 Hun (N. Y.), 515; *Chicago, R. I. & P. R. Co. v. Lake*, 71 Ill. 333; *Barrett v. Kemp*, 91 Ia. 296." This doctrine is again forcibly asserted in *Tyson v. Washington County*, 78 Neb. 211, and it is therein stated: "We think that no authority can be found holding that the policy or expediency of constructing any such public work, the exercise of discretion as to which is vested in any administrative board or official, can, in the absence of statutory permission, be interfered with or controlled by the courts; and, if it cannot be so, the reason must be that the exercise of such discretion and functions raises no question of judicial

cognizance, because the powers exerted are political and governmental in their nature."

Prior to 1879 a county board in this state had no authority to reconsider its action upon a claim against the county; this court holding that its action in the allowance or rejection of such a claim is a judicial act which the board had no power to reconsider or set aside. In 1879 the legislature expressly provided that a county board should not be prevented from once reconsidering their action upon a claim against the county. Laws 1879, p. 366, sec. 40, Ann. St. 1907, sec. 4458; *Stenberg v. State,* 48 Neb. 299; *Brown v. Otoe County,* 6 Neb. 111; *State v. Buffalo County,* 6 Neb. 454; *Kemerer v. State,* 7 Neb. 130. The view of the court as to the power to reconsider seems to have rested upon the proposition that, the act being judicial in its character, it could not be reconsidered. The implication is that, if the court had held the act to be discretionary or administrative in character, the board might, until the rights of third parties intervened, reconsider its former action. We have examined all the cases cited by the relator, and conclude that where, as in this state, an order of this kind is considered to be a legislative or administrative act, the county board has the right to rescind in the exercise of this discretion, unless such proceedings have been taken under the original order that rights of third parties have vested. The county board may have erred in its judgment, and upon further consideration should have the right to correct its error. The fact that the individual membership of the board may change should have no weight, in the absence of any injury or wrong to the public or to third parties. The board is a continuing body, and in the public interest it should have the right to reconsider its action if upon better information it concludes that it is inexpedient or disadvantageous to the public welfare. In Indiana, where the act is held to be judicial, a different principle applies; but in the cases from other states wherein the right to rescind was denied, intervening circumstances had made

it unjust to allow the right to be exercised. While in one sense the proceedings to establish the ditch are special in their nature, the moving cause for the action of the board was the public welfare, the good of the people of the county. We think the matter not different in principle from an order establishing a poor farm, or one locating a highway or ordering the construction of a bridge. In *McNair v. State*, 26 Neb. 257, the right of a county board, which had ordered a section line road established, to declare the road afterwards to be "no road" upon its own motion, and without a petition for its vacation, was denied. But the road had been opened and worked by the road overseer expending a large amount of labor thereon, and claims for damages had been filed and allowed. In the opinion by REESE, C. J., it is said: "The overseer of the road district was directed to open and work the road, and in pursuance of such direction he caused a portion of the road to be opened and worked. By this the section line was made as much a public highway as any established road in the county. It had passed beyond the jurisdiction of the county board, and was no more subject to their control than any other legally established public highway." In the present case, if the ditch had been opened and damages assessed, the case would fall within the rule of the *McNair* case; for, where rights of others have vested, there can be no reconsideration, and this was the essence of the holding in that case.

Have any rights accrued or vested in third persons which placed the order beyond the jurisdiction of the board to reconsider? Before the order was made establishing the ditch, the commissioners had gone upon the land and viewed the line of the proposed ditch with a surveyor. This it was their duty to do irrespective of whether the ditch was finally established or refused. The expense of the proceedings up to the time of the order, therefore, cannot be considered. The order establishing the ditch and appointing an engineer was made on December 9, 1905. Appeals were taken, and the petition recites that

"the said Martin Holmvig as such surveyor and engineer, in accordance with the directions and order of said county board, went upon the line of said improvement for the purpose of leveling and surveying the same, but was delayed and hindered in the completion of such work during the pendency of said appeals." The last appeal was dismissed on the 27th of May, 1907. The order establishing the ditch was rescinded on March 2, 1907, nearly three months before the appeal was dismissed. The engineer's report was filed upon August 20, which was six months after the rescission took place, and nearly three months after the dismissal of the last appeal. The petition alleges that the engineer went upon the line; that he was delayed and hindered during the pendency of the appeals, and yet that an expense of $1,200 was incurred between the time of establishing the ditch and the rescission of the order; that the expenses had become a charge upon the relators' lands; that the board refuses to pay the same and are attempting to charge the relators on their bond therefor, and that these facts will deprive relators of property rights already established. We are not able to perceive how this expense, whatever it may actually be, can be charged against the petitioners on their bond. Their liability ended when the order establishing the ditch was made, and if through erroneous judgment the county board incurred expenses thereafter, the petitioners should not be held liable therefor. If this is true, then they have not been injured, and no rights of theirs have been violated. We think the expense actually incurred for surveying before the reconsideration is of the same nature as incurred in the inception of a public improvement where the board found that it had made a mistake and afterwards reconsidered its action, and that it would not fall upon these individuals. The condition of the bond is "for the payment of all costs that may occur in case said board of county commissioners find against such improvement." This clearly means costs that occur up to the time that the county board established the ditch, and not costs that

occurred afterwards by reason of an error of judgment on the part of the board. No expenses have been incurred except those occasioned by the employment of the engineer, and as to these we must consider the allegations of the pleader most. strongly against himself.

The only question remaining is whether the employment of the engineer and his partial performance of the work assigned him was such a vesting of a right in a third party that the order became irrevocable. We think the case is in this respect similar to one where a county board or a school board employ an architect to draw up plans for a building. The abandonment of the enterprise cannot deprive the architect of remuneration for his work, but the mere fact of his employment can in nowise have the effect to compel the board to erect the building if upon further consideration it deems its former action unwise and inexpedient. The engineer was an employee of the county board. He can only assert the rights given him by virtue of his employment, and his right to compensation for services rendered before rescission cannot operate to compel the board to incur an additional expense which they have determined, upon further reflection, to be against the public welfare.

It is argued that, if the board had the right to reconsider, succeeding boards also have the right, and great public injury might result if such a vacillating policy were permitted. But, if no other rights have intervened, who is harmed? These questions are committed to administrative boards to determine, and if, as has been suggested, the electors of the county might desire a change of policy as to such improvements, and change the personnel of the board for that reason, why should they not have it, if no one has acquired any vested rights which would render it unjust to set aside the former orders of the board.

Under the allegations of the petition, we are of the opinion that the board had the right to reconsider its former action, and reject the prayer of the petition. The demurrer to the petition is therefore

SUSTAINED.