No. 30,284.

THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, *Appellant*, v. DRAINAGE DISTRICT No. 1 OF LYON COUNTY, and J. L. GLOT-FELTER, County Treasurer of the County of Lyon, *Appellees*.

No. 30,293.

THE MISSOURI-KANSAS-TEXAS RAILROAD COMPANY, *Appellant*, v. DRAINAGE DISTRICT No. 1 OF LYON COUNTY et al., J. L. GLOT-FELTER, as County Treasurer, and THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF LYON, *Appellees*.

(1 P. [2d] 253.)

Opinion filed July 3, 1931.

*William R. Smith, Alfred A. Scott, C. J. Putt,* all of Topeka, *William Osmond,* of Great Bend, *W. W. Brown, C. E. Pile,* both of Parsons, and *O. T. Atherton,* of Emporia, for the appellants.

*O. L. Isaacs,* of Emporia, and *Clarence V. Beck,* county attorney, for the appellees.

The opinion of the court was delivered by

DAWSON, J.: These are consolidated appeals from judgments of the district court of Lyon county wherein the appellant railway companies were denied injunctions to restrain the collection of certain taxes imposed on their property by the defendant drainage district and denied recovery of certain taxes paid by them under protest.

The litigation grows out of certain proceedings heretofore undertaken to create a drainage district in Lyon county. The purposes for which the district was organized were found to be impracticable and the project was abandoned, but the undertaking had gone the length of creating certain indebtedness which must be paid. The problem of how that indebtedness should be liquidated was considered in *Fidelity Nat'l Bank & Trust Co. v. Morris,* 127 Kan. 283, 273 Pac. 425; and *Fidelity Nat'l Bank & Trust Co. v. Morris,* 130 Kan. 290, 286 Pac. 206.

To liquidate the indebtedness of the district, its officers made a computation of the estimated amount required, and certified a levy to the county clerk of .01672 cents on each dollar of valuation of real and corporate property in the district. On that basis the tax assessment against the Santa Fe railway's corporate realty within the drainage district was $7,288.22, and against the Missouri, Kansas & Texas company the sum of $4,129.17.

Plaintiffs paid the first half of these assessments under more or less effective protests. In their respective petitions to recover these payments, and to enjoin collection of the remainder, plaintiffs allege many infirmities in the proceedings leading to the assessments and taxes complained of. Such of these as require consideration will be noted in connection with plaintiff's arguments directed against the

judgments which the trial court entered in behalf of the defendant drainage district.

The first contention of the Santa Fe company is that its property within the district was well above flood level and therefore it could not have been benefited if the drainage project had been put into effect. To that there are at least two answers. Property may be isolated or marooned by flood water where not submerged by it and a flood-protection scheme might be as beneficial to it in the one case as in the other. (*Roby v. Drainage District*, 77 Kan. 754, 95 Pac. 399.) Again, if the proposed flood-protection scheme had been of no practical benefit to the Santa Fe company, it is a fair presumption that the responsible officials would have so determined, and no other assessment than its proportional liability for the general overhead expenses of the district would have been imposed on its property.

The same appellant next raises the question as to what law governs its liability for these taxes—the statute under which the district was organized or the statute of 1929. We think it clear that it is governed by the original act and the interpretation thereof as stated in *Fidelity Nat'l Bank & Trust Co. v. Morris*, 127 Kan. 283, 286, 273 Pac. 425:

"How shall that tax be levied? . . . Whatever benefits have been received by land within the district have been received from the survey and report of the engineer, the rejection of his report and the determination to abandon the project. Those benefits, whatever they were, have been received by all the land within the district. . . . It follows that in any effort to be obedient to the law, the tax to pay this indebtedness should be a percentage tax levied on all the land in the district according to its value in money."

That ruling was made on January 12, 1929. The statute of 1929, to which appellant refers, is evidently Laws 1929, ch. 175, R. S. Supp. 1930, 24-647 *et seq.*, which took effect on May 28, 1929. It therefore has no bearing on the question at issue. (*Douglas County v. Woodward*, 73 Kan. 238, syl. ¶ 1, 84 Pac. 1028; *Bailey v. Baldwin City*, 119 Kan. 605, 240 Pac. 852.)

The next point raised by the Santa Fe company is an inquiry as to what this court meant in the Morris case, just quoted, where we said that the tax to pay the indebtedness should be a percentage tax levied on all the land in the district according to its value in money. Counsel would remind us that for general purposes of taxation railway property is to be considered as personal property and not

realty. (R. S. 79-102.) That rule of construction is not one of invariable application, however. In *Railroad Co. v. Jefferson County*, 114 Kan. 156, 217 Pac. 315, a statutory provision covering the apportionment of special taxes to cover the cost of an improvement in a road district was under consideration. The statute said the cost should be apportioned against the land and improvements in the road district. The railway company, as here, reminded the court that railway property is not "land" under our general taxation statute. This court said:

"For purposes of general taxation, railway property of every sort, land, grading, drainage, ballast, rails and ties in place, culverts, signals, fences, etc., and a proportionate amount of the rolling stock, engines, cars and equipment, also its supplies in storage, its terminals within or without the state, and many other valuable assets, tangible and intangible, are all considered as personal property. (Gen. Stat. 1915, § 11150.) For general taxation purposes, the railway plant is substantially regarded as a unit worth a certain number of millions of dollars, and a proportionate amount of this unit located in Kansas and properly incidental thereto is allocated to and taxed in this state, consistent with fairness and justice as nearly as practicable. Of course, such a basis was entirely unworkable in determining the value of the railway's real property and improvements lying within a road-benefit district and subject to special taxation for special benefits accruing thereto, and the judgment in the *Railway Co. v. Labette County* case had to be reversed.

"But while all railway property is classed as personal property for general taxation purposes, that is, for state, county, city, township, and school-district taxation, nevertheless much of such property is in fact 'real property and improvements thereon,' as defined in the statute; and where local, special improvements like paved roads are constructed, railway 'real property and improvements thereon' must bear its share of the cost of special benefits the same as any other land and improvements." (p. 160.)

The court holds that for the purpose of bearing its legitimate and justly proportionate share of the liabilities of this moribund drainage district the railway real property within the district is to be regarded as land, just the same as the realty of other proprietors within the district.

It is next urged that the tax as a whole was not levied in accordance with the provisions of law relating to drainage. The intimation is that the assessment of the railway company took into account its rolling stock, and miscellaneous assets accruing to the corporate entity as a whole. That does not appear. The record indicates that the assessment was based upon the railway company's physical acreage within the district upon information furnished by appel-

lant's own taxing officials. The company, indeed, may have a colorable grievance touching the disproportionate valuation placed upon its property compared with that of farming lands alongside. The railway acreage was assessed at $4,600 per acre and the farming lands at $80 per acre. But this court has no facilities for determining whether that grievance is a real one. That would greatly depend upon the relative value of the improvements on the railway property. If there are double railway tracks of heavy steel, well ballasted, with signal system installed, and other facilities attached to the freehold on the railway acreage within the district, and the adjacent lands are merely farming or grazing lands, any colorable disparity in assessment would amount to nothing. Moreover, if the railway property was unfairly assessed the statute provides a remedy which was open to defendant, as to all aggrieved taxpayers (R. S. 79-1404, 79-1409, 79-707, 79-1702) and that matter furnished no basis for this action either to enjoin the assessment or to recover the tax already paid.

Counsel for the Missouri-Kansas-Texas Railway Company make several of the same contentions urged by the Santa Fe company. We cannot discern the basis for its contention, however, that the assessment against appellant's corporate realty included "the value of personal property and the value of large terminal facilities outside of the drainage district, going concern value, and various intangibles not taxable as land." Plaintiff's petition did not squarely allege such an irregularity, and defendants' answer contained an affirmative defense to the contrary.

Two of the trial court's findings of fact covered this matter precisely. These read:

"16. The county assessor took as a valuation of the right of way of the Atchison, Topeka & Santa Fe Railway Company through said drainage district the valuation as fixed by the state tax commission of the state of Kansas for the year 1930, *which valuation does not include any rolling stock, materials or supplies.* This same valuation was also furnished to the county clerk by the Atchison, Topeka & Santa Fe Railway Company, this valuation being for the property of said railway company within the drainage district, $435,899.

"17. The length of the right of way of the Missouri-Kansas-Texas Railroad Company within said drainage district is 8.66 miles. The county clerk computed the valuation of the same by using the valuation determined by the state tax commission and multiplying it by 8.93, which was the length of said right of way as he erroneously computed it by scaling a map; 4.55 miles of said right of way are above the highest floods and have never been overflowed. And in addition to said main track there is .31 mile of sidetrack,

and buildings valued at $850, so that the valuation of the right of way of the Missouri-Kansas-Texas Railroad Company within the drainage district, *excluding rolling stock, supplies, and material,* as fixed by the state tax commission, is $242,202.30, instead of $245,960 as determined by the county clerk."

Counsel for the M.-K.-T. Railway assert that the taxing authorities illegally used a percentage method of taxation instead of the statutory requirement that taxation shall be based on benefits derived. There is a specious plausibility about that contention, but it is fallacious nevertheless. Here is a debt of $30,000 incurred wisely or unwisely in the projected organization of this drainage district and its incidents. If the organization had not been abandoned that debt would have been absorbed and apportioned with costs of improvements according to the ascertained benefits to the various properties within the district. But since the project has been abandoned those benefits, like Betsy Trotwood Copperfield, have never materialized and never can be ascertained. And by this refinement of argument it becomes apparent that the debt of the district can never be raised by taxation according to the letter of the statute, and consequently it can never be paid. As was said in *Bateman v. Franklin,* 114 Kan. 183, 185, 217 Pac. 318:

"The study and practice of the law call for clear thinking and logical reasoning; but it is possible to reason and refine with such subtlety and acuteness that the arrow of justice overshoots the mark altogether."

The percentage tax on all the realty in the drainage district to liquidate its indebtedness is fully justified by the rule announced in *United States v. New Orleans,* 98 U. S. 381, 25 L. Ed. 225, 226, where it was said:

"When authority to borrow money or incur an obligation in order to execute a public work is conferred upon a municipal corporation, the power to levy a tax for its payment or the discharge of the obligation accompanies it; and this, too, without any special mention that such power is granted. This arises from the fact that such corporations seldom possess—so seldom, indeed, as to be exceptional—any means to discharge their pecuniary obligations except by taxation." (p. 393.)

In the analogous case of *Northern Pac. R. Co. v. Pierce County,* 51 Wash. 12, it was held:

"Under Laws 1895, ch. 115, authorizing the organization of a drainage district where an improvement would be of special benefit to a majority of the lands included in the proposed boundaries, property included in the district which was found to be not benefited may be proportionally taxed with all the other land in the district to pay the preliminary expenses to ascertain whether

the proposed improvement should be carried out, upon abandonment and dismissal of the proceedings for lack of sufficient benefit to cover the cost; the power to levy such tax being incident to the main power conferred, and is not affected by failure of the contemplated improvement." (Syl. ¶ 1.)

Another objection of the M.-K.-T. Railway to the tax is that it is designed to raise a much larger sum than justified by the amount of the district's indebtedness. It does not appear that this point was fairly raised at the trial, and appellant's computations submitted for our scrutiny do not establish the point. Moreover, the precise sum requisite to liquidate defendants' indebtedness cannot be determined to a cent until this litigation is concluded and until the trustees of the dormant district are left in peace to settle and wind up its affairs. The trial court's special finding No. 22 was to this effect. (*Smith v. Comm'rs of Leavenworth Co.*, 9 Kan. 296.)

Touching the contention that the assessed valuation of the M.-K.-T. company's property is excessive, there was a statutory tribunal provided to which the railway company should have resorted for redress. That matter cannot be litigated now nor in this lawsuit.

The foregoing disposes of the principal contentions of both appellants, and in view of the conclusions which we reach it is needless to consider the point whether the payments made by them of the first half of the taxes complained of were sufficiently protested to save the rights of the litigants if any of their legal objections to the taxes had been sustained. But the requisites of the new statute on the subject of paying taxes under protest are worthy of painstaking study on the part of everybody concerned. (Laws 1929, ch. 291, R. S. Supp. 1930, 79-2005.)

The judgments are affirmed.