[File No. 6169.]

A. W. WALSTAD, as Administrator of the Estate of Henry C. Walstad, Deceased, for Himself and All Others Similarly Situated, Appellant, v. GEORGE C. DAWSON, L. E. Cole and E. L. Holmes, as the Board of Drainage Commissioners in and for Sargent County, North Dakota; R. W. Safstrom, as County Auditor of Sargent County, North Dakota; The First & Moorhead National Bank, a Corporation, Formerly the First National Bank of Moorhead; and O. M. Westelin, as Receiver of The First & Moorhead National Bank, a Corporation, Respondents.

(252 N. W. 64.)

334

Opinion filed January 5, 1934.

*A. Leslie,* and *Kvello & Adams,* for appellant.
*B. F. Spalding* and *C. O. Stockslad,* for respondents.

NUESSLE, J.   Plaintiff brought this action on behalf of himself and others similarly situated to enjoin the Drainage Board of Sargent County and the Auditor of that county from proceeding in the spreading and collection of certain drainage special assessments.   A temporary restraining order was issued.   Thereafter the case was disposed of on its merits.   The temporary order was dissolved and the action was dismissed.   Thereupon the plaintiff perfected the instant appeal and demands a trial de novo in this court.

There is little controversy as to the facts in the case.   We set them

forth substantially, as follows: In June, 1919, pursuant to § 2466, Comp. Laws 1913, a petition was filed with the Drainage Board of Sargent County for the establishment of a drain, known as Dunbar-Shuman Drain No. 17, affecting 6,620 acres of land, including 480 acres that belonged to the plaintiff and appellant. This petition was accompanied by the requisite bond to cover all expenses of surveys and of the commissioners in case it should appear after the surveyor's report was filed that the proposed drain would cost more than the amount of the benefit to be derived therefrom. The petition was not signed by the appellant. On the contrary, he joined with others in making and filing a protest against the establishment of the drain. A survey of the drain was made and a report thereof was filed. Thereafter the Drainage Board duly ordered and held a hearing to consider the petition and the objections thereto. Appellant appeared at this hearing in support of his protest. On December 6th, the Drainage Board overruled the protest, granted the petition, and duly made an order establishing the drain. No steps were taken to challenge the propriety of this order. Thereafter the Drainage Board entered into negotiations to acquire the right of way for the drain. In that behalf some deeds were executed and put in escrow, but no payments were made therefor and no steps were taken to procure the funds wherewith to pay. Nothing further was done in the way of constructing or completing the drain. No notices for bids for the construction were advertised, and it was never ascertained what the cost of the construction would be, except as it appeared from the estimates furnished by the engineer employed by the Drainage Board. No assessment was ever made or attempted for the purpose of paying for the drain when constructed or for any of the expense entailed in the proceeding. No order was ever entered abandoning the enterprise. The Drainage Board made several annual reports of its proceedings to the board of county commissioners. In its report filed in March, 1921, the board reported that it was advisable to wait further developments and when conditions improved to proceed with the drain if it was desirable to do so. A similar report was made and filed in 1922. In this report the board stated, among other things, that highways had been built which largely served the purpose of the proposed drain.

One Stevenson, of Fargo, was the engineer employed by the board.

As compensation for his services in making surveys, profiles, plats, estimates, and so forth, the board issued and delivered to him their warrant for $988.76, dated December 18, 1919. This warrant was thereafter sold to the First & Moorhead National Bank, of which the defendant O. M. Westelin is now the receiver.

On January 28, 1927, the warrant not having been paid, the bank, as relator, first having applied for and secured the consent of the Attorney General to do so, instituted a mandamus proceeding in the name of the State against the Drainage Board and procured an order directed to the board to show cause why it should not take the steps provided by law preliminary to the making of assessments on the lands to be benefited by the proposed drain, and the carrying out on the assessment list of the amounts that the various lands so benefited should pay for the right of way and the construction of said drain, and file the same in the office of the county auditor. This order was returnable before the Honorable Charles E. Wolfe, District Judge, on February 23, 1927. The matter was continued until March 30, 1927, at which time the board appeared and moved to dismiss the proceedings on the ground that the facts stated in the affidavit and application were insufficient to warrant the granting of the relief prayed for, or any relief, and that it appeared therefrom that the cause of action on the warrant had accrued more than six years prior to the commencement of the proceeding.

On May 26, 1927, the motion theretofore made not having been determined, the defendants filed answers in which they moved to dismiss for the same reasons as set out in the motion. The answers further set up the statute of limitations; alleged abandonment of the proceedings for the construction of the drain by and with the consent of those interested therein for the reason it had become apparent that the benefits would not equal the cost of construction; that the construction of various public highways had, in a large measure, accomplished the purposes that the proposed drain was intended to serve; that there was fraud practiced upon the board by the engineer to whom the warrant had been issued; that since the commencement and abandonment of the drainage proceedings much of the land affected had been transferred to various individuals and corporations who had no knowledge of the establishment of the drain, and that an assessment against these

lands would constitute an assessment of property without due process of law; that there was no law permitting an assessment without construction and without procuring rights of way; that the expense would exceed the benefits; that the construction of the drain would duplicate the existing highway drainage facilities and would cause damage to roads and other damage; that the proposed assessment would constitute a double assessment.

Thereafter testimony was taken touching certain of the issues raised by the answer thus interposed. On July 31, 1928, a compromise was effected, the relator waiving a portion of the accrued interest on its claim, and a stipulation was entered into between the board, the attorneys for the board, and the attorney for the relator. This was made upon the files and records to the effect that the court might issue its writ—findings of fact being waived—commanding the board to forthwith assess a sufficient sum against the lands which would have received benefits from the construction of the drain to pay the amount of the compromised claim with interest at 6 per cent from April 1, 1928, in special assessments over a period of three years in accordance with the assessing statutes. Judgment was entered accordingly and the writ issued.

The board proceeded to obey the writ by giving notice of a meeting to determine the assessments and posted five copies thereof. This notice gave the date and place of hearing as August 5th at the court house at Forman, the county seat, but did not specify the hour thereof. The board also published a notice which contained a schedule of the lands and the amounts proposed to be assessed thereon, and further sent out by registered mail a notice which contained the date, hour, and place of meeting. The appellant, though he received notice of the meeting, did not attend.

The meeting was held pursuant to the notice and thereafter the board made its assessment order, dated December 27, 1930, ordering a levy of the stipulated amount spread against the lands which would have been benefited by the drain in equal instalments for the years 1930, 1931, and 1932, and certified the same to the county auditor. The proportion of this levy against each tract was determined by the ratio that the benefit which would have accrued to that tract if the drain had been completed bore to the whole benefit that would have accrued

therefrom. The appellant then brought this action to enjoin the defendants, the Drainage Board and the county auditor from spreading the assessment upon the records of Sargent county against land belonging to the appellant.

Chapter 133, Sess. Laws 1927, is entitled "An Act to Provide for the Payment of Outstanding Warrants issued by any Board of Drain Commissioners for Expenses incurred and for Services of Surveyors, Engineers and other Persons or Corporations, Contracted for and Rendered Prior to the Establishment of Drains for the Purpose of Draining Agricultural Lands in cases where any such Board has Established such Drain or Drains, and same has thereafter been abandoned, or the Construction thereof Postponed for a Period of more than Two Years, and Providing for the Reconveyance of Land no Longer Required for Drainage Purposes," and provides that where any established drain has been abandoned or the construction thereof discontinued for a period of two years or more and no levy or collection of any assessment has been made to provide funds wherewith the expenses theretofore incurred may be paid, the Board of Drainage Commissioners shall apportion the outstanding warrants drawn for the payment of such expenses to the lands benefited by the proposed drain in proportion to the benefits found to accrue to such tracts of land and take appropriate steps to levy the amount so apportioned against such lands. It further provides for the reconveyance of such lands as may have been acquired for the use of the drain, but are no longer required on the surrender of warrants issued or the repayment of the cash paid therefor.

The drainage statute, chapter 37 of the Political Code, being §§ 2461–2495, both inclusive, Comp. Laws 1913, as amended, has heretofore been the subject of the consideration of this court on many occasions. First in the case of Martin v. Tyler, 4 N. D. 278, 60 N. W. 392, 25 L.R.A. 838, and last prior to the instant case in Barnes v. Cass County, 59 N. D. 135, 228 N. W. 839, where the history of the statute and the litigation arising under it are reviewed. But the question here raised has never before been presented. Nor have we been able to find any case in any other jurisdiction identical with the one at bar. However, certain fundamental principles have been laid down

that provide a foundation on which the judgment of the district court securely rests.

The Drainage Board created under the statute is a quasi corporation —a department of the county. Reed v. Heglie, 19 N. D. 801, 124 N. W. 1127. See also Houck v. Little River Drainage Dist. 248 Mo. 373, 154 S. W. 739. It is an agency of the state through which the state itself functions. Hadler v. North West Agri. Live Stock & Fair Asso. 61 N. D. 647, 239 N. W. 736. So it has such powers as are expressly conferred by statute or are necessarily implied in order to effectuate the purposes for which it was created. Lang v. Cavalier, 59 N. D. 75, 228 N. W. 819. Granting that the preliminary steps incident to the establishment of a drain are properly taken, and that is conceded here, the determination of the Board of Drain Commissioners with respect to the question of whether the benefits exceed the costs and whether the drain shall be established is, unless an appeal is duly perfected therefrom, final. Erickson v. Cass County, 11 N. D. 494, 92 N. W. 841; Bergen Twp. v. Nelson County, 33 N. D. 247, 156 N. W. 559; Barnes v. Cass County, 59 N. D. 135, 228 N. W. 839, supra. And this is so even as against a protestant if his lands are affected. Hackney v. Elliott, 23 N. D. 373, 137 N. W. 433.

The instant action challenges the propriety and effect of the judgment entered in the mandamus proceeding. The meat of appellant's contention in this respect is that the judgment in the mandamus proceeding in effect imposes a tax on his lands for items of expense which were not proper tax charges at the time the drain was established, and thereby his constitutional rights have been violated. In that behalf he contends that under the terms of the drainage statute in effect when the drain was established, the Drainage Board had no authority to levy an assessment to raise funds for the payment of warrants issued for the preliminary expenses incurred in establishing a drain where the drain was never completed and the project was abandoned; and, second, that since there was no such authority in the Drainage Board at the time of the initiation of the project in question or when the warrants involved were issued or when the mandamus action was begun to compel the levy of an assessment to pay them, that chapter 133, Sess. Laws 1927, supra, is unconstitutional if given a retrospective effect, in that it violates § 10 of Article 1 of the Constitution of the

United States forbidding any state to pass any law impairing the obligation of contracts, and its counterpart, § 16 of the Constitution of the State of North Dakota; and Article 5 of the Amendments to the Constitution of the United States guaranteeing that no person shall be deprived of property without due process of law, and its counterpart, § 13 of the Constitution of the State of North Dakota; and subdivision 23 of § 69 of the Constitution of the State of North Dakota providing that the legislative assembly shall not pass local or special laws for the assessment or collection of taxes.

The mandamus proceeding wherein the writ directed to the Drainage Board and to the county auditor of Sargent county issued, under the compulsion of which the levies sought to be enjoined were made and were about to be spread by the defendant auditor, was begun in January, 1927. While this proceeding was pending, chapter 133 of the Session Laws of 1927 was enacted. It became a law on March 7, 1927, and effective as such on July 1, 1927. Though the proceeding was begun in January, 1927, it was not until July 31, 1928, that the stipulation of compromise and for judgment therein was made and filed and judgment pursuant thereto entered.

The mandamus proceeding was begun at the instance of the relator in the name of the state. The relator first applied for and obtained the consent of the Attorney General of the State to thus institute it. The relator had no remedy other than mandamus whereby he might enforce the collection of the drainage warrants held by him. Reed v. Héglie, 19 N. D. 801, 124 N. W. 1127, supra. These warrants were obligations of the Drainage Board and not of the owners of the lands affected. Consequently, the board of drain commissioners and the county auditor and not the individual owners were proper parties defendant. And so the proceeding was properly brought. The defendants were represented by the state's attorney of Sargent county and other experienced special counsel. There is no ground for the least suspicion of collusion or fraud. Evidence was taken touching some, at least, of the issues made by the pleadings. Ultimately the compromise was effected, under the terms of which the relator waived a portion of his claim, and judgment was entered in his favor whereby an assessment was to be levied and spread to enable the board to pay the compromise claim. No appeal was taken from this judgment and it

became final. Thereby the drainage board was concluded as to all the matters that were or properly might have been presented under the pleadings, including the amount and validity of the claim. While the writ that was issued pursuant to the judgment directed not only the levy and spreading of the assessment, but also provided as to how the assessment thus levied and spread should be apportioned through the years, there was no command with respect to the amount that should be assessed against any particular tract of land. That was left to be determined by the statutory authority, the Drainage Board, in the manner provided by law. We think that no exception can be taken to the judgment in these respects, and every individual taxpayer whose land was affected, including the appellant, was concluded thereby. State ex rel. Davis v. Willis, 19 N. D. 209, 124 N. W. 706; Freeman, Judgm. 5th ed. § 507, and authorities cited. So, if under the statute as it existed prior to the enactment of chapter 133, Sess. Laws 1927, the Drainage Board had the authority to assess the lands found to be benefited for the expenses entailed where the drain was established, but was thereafter abandoned and never completed, or if chapter 133 was a constitutional and valid enactment, then the appellant having no complaint to make on the ground that proper notices were not given or the proper steps taken in making the assessment, must fail on this appeal.

In the instant case the appellant, whose lands were included among those alleged to be benefited by the proposed drain, refused to sign the petition for its establishment, but, on the contrary, protested against it. A hearing was duly ordered on the question. Due notice was given thereof. The hearing was had. The appellant participated. His objections were overruled. The board found favorably to the petition, granted it, and ordered the establishment of the drain. At the hearing thus had the question of benefits was considered and the board must have determined that they exceeded the cost of the project. See Comp. Laws 1913, § 2465; Redmon v. Chacey, 7 N. D. 231, 73 N. W. 1081. No appeal was taken from this finding of the board. Under the statute, § 2464, the petitioners were required when they presented their petition to the board, to present and file with it their bond to cover all expenses of the survey and of the drain commissioners if it should appear after the surveyor's reports were filed that the proposed drain

would cost more than the benefit that might be derived from it. This requirement was complied with. Thereafter the board, acting under the authority of the same section, employed an engineer to make surveys and prepare profiles, plans and specifications of the proposed drain and an estimate of the cost thereof, and a map or plat of the lands to be drained. The engineer performed this service. Thereafter when the board made its determination and established the drain, thereby the bond of the petitioners was exonerated and the obligation which had been incurred incidental to the establishment thereof became the obligation of the Drainage Board. It is true, as appellant contends, that under the statute as it existed at that time there was no express provision whereby funds might be raised with which to discharge its obligations prior to the assessment of the benefits and the completion of the project. Nevertheless, the obligation was the obligation of the board and the moneys to pay it were to be raised by levies against the lands benefited by the drain in proportion as they were benefited. When the drain was finally established the plaintiff, though it was established over his protest and objection, became a beneficiary under the project and was bound by whatsoever may lawfully have been done theretofore or might thereafter lawfully be done in furtherance of its completion. The engineer was entitled to receive compensation for the work done by him under appropriate employment by the Drain Commissioners and the commissioners were clothed with authority to issue warrants to him for such compensation. Comp. Laws 1913, § 2475. Such warrants though the obligation of the Drainage Board could only be paid out of funds resulting from assessments against the lands benefited. The holder of the warrants was, therefore, interested in seeing that such assessments were made and collected. Whether he or his assignee had the right to compel the board to prosecute the project to completion, we need not determine. On the other hand, the plaintiff was entitled to the benefits accruing from the drain and could compel the commissioners to proceed toward its completion. The fact that he saw fit, as in this case he did see fit, to waive those benefits and permit the project to be abandoned, ought not to be permitted to work to the injury of the holder of the engineer's warrant. The obligation was a proper one. It was lawfully incurred. It ought to be paid. Certainly the legislature in enacting the statute making provision to enable the

Drainage Board to contract for the survey and to issue warrants to pay for such survey contemplated that the warrants thus issued should be paid. And the power and the duty to provide for their payment are implied. See Citizens Sav. & L. Asso. v. Topeka, 20 Wall. 655, 22 L. ed. 455; United States ex rel. Ranger v. New Orleans, 98 U. S. 381, 25 L. ed. 225. A subsequent abandonment of the project ought not to deprive the engineer of his right to compensation for services which he lawfully performed for the board. See State ex rel. Sullivan v. Ross, 82 Neb. 414, 118 N. W. 85. It is impossible to reach any other conclusion. Practical as well as moral considerations compel it. The legislature made provision requiring a bond from the petitioners to insure the payment of the engineering preliminary expense. To exonerate this bond and, at the same time, leave the payment to pure speculation and chance depending wholly upon the completion of the project, would make it practically impossible to have preliminary surveys made at any reasonable figure. We think that both authority and reason require us to hold that the obligation represented by the warrant was a proper charge against the lands affected and that the power existed to provide for its discharge though the drain was not completed. See Northern P. R. Co. v. Pierce County, 51 Wash. 12, 97 P. 1099, 23 L.R.A.(N.S.) 286. See also Houck v. Little River Drainage Dist. 248 Mo. 373, 154 S. W. 739, supra; same case, 239 U. S. 254, 60 L. ed. 266, 36 S. Ct. 58; Crawford County Levee Dist. v. Dunbar, 107 Ark. 285, 155 S. W. 97; Atchison, T. & S. F. R. Co. v. Drainage Dist. 133 Kan. 586, 1 P. (2d) 253, 82 A.L.R. 552.

It follows from what we have said above with respect to the power of the Drainage Board to provide for the discharge of relator's warrant, that chapter 133, Sess. Laws 1927, to which appellant takes exception, created no new rights in favor of the holder of the warrant. If it had been in effect when Dunbar-Shuman Drain No. 17 was established there certainly would have been no ground for challenge by the appellant. For this court has heretofore held that under the statute the whole cost of the drainage project can be constitutionally assessed against the lands therein and benefited thereby. Erickson v. Cass County, 11 N. D. 494, 92 N. W. 841, supra. Since this is so we can see no valid legal objection to an assessment of the costs piecemeal as the several items are incurred. Chapter 133 did not infringe upon any

rights that the appellant enjoyed at the time of its enactment. It did not purport to create or validate a claim against the drainage board or the lands benefited. It did not deprive the appellant of his property without due process of law. It impaired no contractual obligation in which he had an interest. It was purely remedial in character and merely provided a method and plan by which a pre-existing valid obligation might be discharged. So the legislature had the power to enact it. Hanson v. Franklin, 19 N. D. 259, 123 N. W. 386; Craig v. Herzman, 9 N. D. 140, 81 N. W. 288. Nor does the fact that the statute was enacted during the pendency of the mandamus proceeding make any difference. Hodges v. Snyder, 45 S. D. 149, 186 N. W. 867, 25 A.L.R. 1128, and cases cited in note.

Neither can the fact that the drain was abandoned because the necessity for it had passed either by reason of a change in the seasons or on account of the building of other drainage facilities which accomplish the same purpose, make any difference. Charges lawfully incurred prior to the abandonment must be paid. Provision to do this may be made by a levy based upon the anticipated benefits. See Crawford County Levee Dist. v. Dunbar, 107 Ark. 285, 155 S. W. 96, supra. Such benefits must be determined as of the date of the establishment of the drain. Otherwise there can never be certainty with respect to the payment of the cost of construction. That is the time when contracts are made and obligations incurred. Conditions may change for one reason or another, as in the instant case. Consequently, the reasons for the exercise of judgment may differ from time to time.

The appellant insists that he had a vested right to have the drainage assessment against his lands made in the manner provided by law in effect at the time the drain was established. We think he is mistaken in this. He had no contract with the board. He did have the right to be heard on the question of benefits. His land could not be charged with an assessment exceeding the benefits that would accrue to it. But the determination of the Drainage Board as to those matters after a hearing became final when he failed to challenge that determination in a proper manner. Thereby he was bound and his lands were charged with their proportionate share of the cost of the project. The State, whose agent the Drainage Board was, might change the manner in which the assessments should be levied and collected so long as it did not

increase the burden thereof upon his land. Houck v. Little River Drainage Dist. (both cases) 248 Mo. 373, 154 S. W. 739, s. c. 239 U. S. 254, 60 L. ed. 266, 36 S. Ct. 58, supra.

Accordingly, there was no violation of appellant's constitutional rights guaranteed to him by § 10 of Article 1 of the Constitution of the United States and article 5 of the amendments to the Constitution of the United States and by §§ 13 and 16 of the Constitution of the state of North Dakota.

Neither was there any violation of subdivision 23, § 69 of the Constitution of the state of North Dakota forbidding the legislative assembly to pass local or special laws for the assessment or collection of taxes. The statute here challenged does not purport to be and is not local or special. It covers all cases where drains have been properly established and have been abandoned or discontinued for a period of two years or more and no levy or collection of any assessment has been made to provide a fund from which the expenses incurred may be paid. See Angell v. Cass County, 11 N. D. 265, 91 N. W. 72.

From what we have said above it follows that the judgment of the district court must be and it is affirmed, subject, however, to such modifications as may be necessary by reason of the delay incident to this appeal. In that behalf it appears that under existing conditions it is expedient that the assessments made by the Drainage Board against the respective tracts of land affected thereby, be made payable in two equal instalments. The first instalment thereof to be due on December 31, 1934, and the second instalment to be due on the regular tax due date in 1935. The record will therefore be remanded with directions to the district court to enter judgment accordingly.

It is so ordered.

BURR, Ch. J., and BURKE and CHRISTIANSON, JJ., concur.

MOELLRING, J., did not participate.