No. 28,382.

The Fidelity National Bank and Trust Company of Kansas City, Missouri, *Plaintiff*, v. Joseph J. Morris et al., constituting the Board of Supervisors of Drainage District No. 1 of Lyon County, and W. J. Hanna, Clerk and ex officio Assessor, etc., *Defendants*.

(286 Pac. 206.)

No. 29,140.

Justin D. Bowersock et al., doing business under the Firm Name of Bowersock, Fizzell & Rhodes, *Plaintiffs*, v. Joseph J. Morris et al., constituting the Board of Supervisors of Drainage District No. 1 of Lyon County, *Defendants*.

Opinion filed April 5, 1930.

*Justin D. Bowersock, Robert B. Fizzell* and *John Franklin Rhodes,* all of Kansas City, Mo., for the plaintiffs.

*Orin L. Isaacs, O. R. Stites,* both of Emporia, *Bennett R. Wheeler, S. M. Brewster* and *John L. Hunt,* all of Topeka, for the defendants.

The opinion of the court was delivered by

HUTCHISON, J.: Two original proceedings in mandamus have been consolidated to be heard and tried together.

The first case was brought by the Fidelity National Bank and Trust Company against the board of supervisors of drainage district No. 1 in Lyon county, and recently the county clerk of Lyon county was made a party defendant. This case involves the question of the right of the plaintiff to a levy of a tax on the land in the drainage district to pay the plaintiff for money borrowed to meet the necessary cost and expense of the organization and incorporation of the district, and to require the defendant board and the county clerk to levy a tax on the land in the drainage district to repay the money borrowed for that purpose by the defendant board of supervisors.

The other case was filed more recently and by three persons constituting a firm engaged in the practice of law, to procure an order of this court requiring the defendant board of supervisors of the drainage district to take the necessary preliminary steps and to levy on the land in the district a tax sufficient to provide for the payment of two claims for attorney fees and expenses for services already rendered by them for the defendant board and approved by the board.

In each case the defendant board filed a motion to quash the

alternative writ and also an answer, and the county clerk filed a motion to quash the alternative writ in the first case and an answer. The answers, however, raise only questions of law and will be considered in connection with the motions to quash.

The first case was here before, and the opinion was filed January 12, 1929, and reported in 127 Kan. 283, 273 Pac. 425, the county clerk not then being a party defendant. It is here now after the rendition of the opinion to compel the board of supervisors to take the necessary preliminary steps for the levy of a tax, and the county clerk to levy such tax on the land of the drainage district to pay the money borrowed.

Counsel for all parties have in a measure reargued in both these cases many of the questions involved and decided in this earlier case. We have fully considered such reargument, but are not persuaded that the opinion heretofore rendered. should be reversed, changed or modified; neither do we think it will serve any good purpose in this opinion to again discuss or restate our reasons for adhering to the conclusions therein reached.

Because we expect in the first case to take up the questions involved and consider them only from the point where the opinion in the first case left them, and in the second case to apply the facts therein to the law, including that announced in the decision in the first case, it will be helpful to set out and state herein the decision reached in the former hearing, as expressed in the three paragraphs of the syllabus.

"Section 24-621 of the Revised Statutes authorizes drainage districts to borrow $5,000 to pay for the organization and incorporation of drainage districts and to pay other legitimate charges and expenses incurred, and impliedly authorizes the levy of a tax to repay the money borrowed, although the drainage project is abandoned on the filing of the report of the engineer employed to make the survey.

"Such a tax as is mentioned in the first paragraph of this syllabus may be a percentage tax levied on all the land in the drainage district according to its value.

"Under the circumstances mentioned in the first and second paragraphs of this syllabus, when the organization of the district, the employment of an engineer, his report, the borrowing of the money, and the failure to pay and to levy a tax to provide funds with which to pay the amount borrowed are admitted, it is not necessary that the claim be reduced to judgment before a peremptory writ of mandamus will issue."

After the decision in the first case was rendered in January, 1929, nothing effective seems to have been done by the defendant board

until August 24, 1929, when a resolution was passed by the board making a tax levy of three mills upon the real property within the drainage district, which resolution was on that date duly certified and delivered to the county clerk of Lyon county. Because nothing was done by the county clerk with reference to making the levy, the plaintiffs on October 17, 1929, made an application to this court in the same case to make the county clerk a party defendant and for an alternative writ against the defendant board and the county clerk, ordering and directing them to make the levy. It is this alternative writ that is now before us on motions to quash the same.

The first two points discussed in the briefs, viz., has the board power to levy a tax, and what property shall be taxed, are answered by the former decision, the first in the affirmative and the second by the statement in the opinion that it "should be a percentage tax levied on all the land in the district according to its value in money." It might be said, incidentally, that the levy approved in the former opinion was not under R. S. 24-618, because that only prescribed the plan of levy for a district that is a going concern. This is a levy for the organization expense of an abandoned enterprise. Neither is it a levy under R. S. 79-402. This drainage district was organized under R. S. 24-601 to 24-604, inclusive, by the action of the landowners in the district, who later have abandoned the project. These landowners are the ones who have set the wheels in motion and incurred this expense, and because they chose to go no farther with the project it cannot be collected on the basis of benefits received. Some may have opposed the scheme from the beginning and protested, but R. S. 24-602 and 24-603 define their rights and privileges which could thereunder have been heard, adjusted and terminated. It affects the owners of more than 18,000 acres in Lyon county, who more than five years ago organized this district, doubtlessly with the hope and prospect of benefiting their property, but later, perhaps in the exercise of good judgment, thought best to abandon it entirely. That was perfectly right and proper, but the money spent, and perhaps well spent, in aiding them to reach this conclusion is an obligation of those who borrowed it and spent it, namely, the landowners who alone under the law could originate such a district.

Very similar propositions were presented and considered in *Bank v. Sheldon,* 96 Kan. 492, 152 Pac. 765; *Lithographing Co. v. Crist,* 98 Kan. 723, 160 Pac. 198, and *Weber Engine Co. v. Alter,* 120 Kan.

557, 245 Pac. 143, although the enterprises that were abandoned were different and had been promulgated under different statutes.

The third point presented in the briefs on the motions to quash the writ is whether the county clerk has authority to extend the tax upon the roll and proceed to value the land in the district. On this point the plaintiff and defendant board are agreed that he has such authority and he is the one required by law to fix the value of real estate in the first instance. The county clerk alone questions this authority and cites R. S. 79-425 as requiring notices to landowners where the land has been divided since it was last assessed. This section, of course, will not apply in every detail, but doubtless it contains helpful suggestions to a clerk anxiously looking for a way to perform an official duty at the request of an organization in his county desiring a levy extended on the land they represent, a full description and map of which is on file with him and another tendered him accompanying the request. Reference is also made to R. S. 79-402 and R. S. 24-401 to 24-480, with the thought expressed that surely these sections do not apply, with which we agree.

It is admitted that the county clerk of Lyon county is the county assessor. His duty in such double capacity is partly prescribed in R. S. 79-408, as follows:

"The county clerk shall make out all real-estate assessment rolls that may be required *for the several assessment districts* in his county. Such assessment rolls shall contain a correct and pertinent description of each piece, parcel or lot of real property in numerical order as to lots and blocks, sections or subdivisions, in the respective townships or cities, as the case may be. . . . The county assessor shall then furnish each deputy assessor with a field book, in form to be prescribed by the tax commission, which field book shall have perforated leaves, and shall contain full and complete legal descriptions of all real estate subject to assessment and taxation in the assessment district to which any such deputy assessor has been assigned for assessment work, and shall provide for the gathering and reporting of such facts in relation to real estate and real-estate values as the tax commission may require."

And in the same section, with reference to the work and expense involved, it is provided:

"The county assessor shall be provided by the board of county commissioners with the clerical help needed to have the work properly done or may assign a deputy assessor to aid the county assessor in such work."

By analogy the assessment of the land in a drainage district is very similar to the process of assessing it in a school district. R. S. 79-1429 provides that the county superintendent shall furnish the

*metes and bounds of the district.* Suppose a small stream ran in a meandering way through a number of farms and with the approval of the county superintendent the stream should be made the dividing line between two country school districts, is there no way under the statutes to get a separate valuation of the land lying in each of those two school districts? There is nothing more difficult about establishing the taxable value of the land in the drainage district, and R. S. 79-408 fully authorizes it to be done by the county clerk.

When the briefs in this case were prepared and filed it was between the times for the regular assessment of real property every four years, but there were ample provisions for meeting that situation between those periods, which need not now be discussed, as we are just now at the regular period for real-estate assessment, and the assessment of the land in this district can be made with that of all land assessments in the county, for the year 1930.

The final point urged by the county clerk is that the assessment of the land alone would be unconstitutional and void. That matter, although he was not represented in the former hearing of this case, was necessarily included in the result therein reached, and will be allowed to stand as it was there decided.

Another proposition is involved in the present action that was not included in the former hearing, and it has been thoroughly briefed by plaintiff and defendant board. That is a claim of the plaintiff for an attorney fee in this case, which is often considered as a natural sequence of a decision for plaintiff in a mandamus case. R. S. 60-1710 provides that—

"If judgment be given for the plaintiff, he shall recover the damages which he shall have sustained, to be ascertained by the court or jury, or by referee, as in a civil action, and costs."

In the case of *Nolte v. Telephone Co.*, 86 Kan. 770, 121 Pac. 1111, it was held that reasonable attorney fee was proper under this statute where one had to resort to the courts by mandamus to obtain his rights. (See, also, *Reeves v. Ryder*, 92 Kan. 168, 139 Pac. 1028; *Super v. Modell Township*, 92 Kan. 979, 982, 146 Pac. 993.) A reasonable attorney fee will be allowed the plaintiff as a part of the costs in the action.

Now as to the second case, which is against the board only, and involves the power of the board of supervisors of the drainage dis-

trict to incur indebtedness for the district in excess of its borrowing power limited by statute to $5,000 (R. S. 24-621), and the power to levy a tax to provide for the payment thereof. The distinction between this case and the former one is that the claims in this case are for attorney fees authorized by the board and later allowed and approved by the board, whereas the former was for borrowed money especially authorized by statute to be borrowed for the preliminary purposes incident to the organization of the district.

It is the theory of the defendant board that since there is a limit placed by statute on the amount that can be borrowed for the preliminary expenses of organization, no indebtedness in excess of that amount can be lawfully incurred by the board, and that the statute does not authorize the incurring of any such excess. We concur in the views of the defendant that for ordinary expense, unless there is statutory authority for the same, either express or implied, it was not properly incurred. In the first place, the limitation in R. S. 24-621 is not upon the amount of indebtedness that may be incurred but upon the amount that may be borrowed. A limitation upon the right to borrow money not to exceed a specified sum is not regarded in itself as a limitation on the power to incur indebtedness in excess thereof for authorized purposes. (1 Dillon on Municipal Corporations [5th ed.], 544.) There is no attempt in the section above mentioned to limit anything except the amount to be borrowed. The entire section is devoted to the matter of the issuance of bonds generally, and they are limited to the total tax levy of the district, and then the concluding sentence provides for this preliminary borrowing of $5,000 before funds can be secured from the levy of a tax or the sale of bonds. R. S. 24-608 outlines the preliminary duties of the board, specifies their compensation and authorizes the employment of clerical and other assistance, including an attorney. R. S. 24-613 to 24-617 provide for hearings of protests, costs of such hearings and the conducting of appeals, implying the need of an attorney and the liability for various kinds of expense. R. S. 24-614 specifically authorizes the attorney to represent the drainage district in such protests. R. S. 24-618, in the enumeration of the items of expense that are to be levied after the plans for the improvement and drainage have been approved, mentions "the actual expense of organizing said district, the probable working and administrative expenses and damage (as esti-

mated by said board of supervisors) in the completion of said works and improvements and the carrying out of the objects of said district."

R. S. 24-633 is as follows:

"The board of supervisors, except where otherwise provided, shall by resolution, at time of hiring or appointing, provide for the compensation for work done and necessary expenses incurred by any officer, engineer, attorney, or other employee, and shall also pay the fees of all court and county officers who may by virtue of this act render service to said district."

Surely there can be no serious question as to the authority of the board to secure the services of an attorney for the usual and ordinary need indicated by the statute, and particularly for extensive litigation growing out of the organization efforts. But it is urged that the statute uses the word "attorney" in the singular number only, and that the board could not employ a firm composed of three attorneys, especially when it already had a local attorney residing in the county. This contention is fully answered by reference to the third subdivision of our statute on construction of statutes, R. S. 77-201.

"Words importing the singular number only may be extended to several persons or things, and words importing the plural number only may be applied to one person or thing."

Whether one or more attorneys were legally employed under the statute in this case, the employment and authority would come from the same source, viz., the board of supervisors. No one is superior to the other if two or more are employed unless the board should make such designation, which is very different from the facts in the case of *Waters v. Trovillo,* 47 Kan. 197, 27 Pac. 822, cited by defendant, where the county commissioners attempted to employ an attorney to perform services that the law required the county attorney to perform. The county attorney was a public officer, and his employment came from as high a source as that of the county commissioners. He was charged by statute with certain duties, and when the commissioners named another to perform his prescribed duties in the county in which he was elected by the people, the commissioners were exceeding their authority, and the appointed attorneys could not supersede nor displace him.

The record here shows these plaintiffs were employed to assist the attorney already employed by the board, and that there were three cases pending in the district court at the time the first con-

tract of employment was made and one at the time of the second employment, and provision was made for possible appeals to the supreme court and hearings therein. After the services were rendered by the plaintiffs' attorneys, they presented their claims for fees and expenses to the board, in accordance with the contracts, and they were allowed by appropriate resolutions of the board at a meeting at which all members were present. Objection is made to the allowance of these claims by only a majority vote instead of a unanimous vote. There are a few acts of boards of this character where the statute requires that to make the act valid it must have the unanimous support of the members of the board. But this is not one of such acts. Unless the statute specifically requires a unanimous vote, a majority vote is all that is or can be required, and it has the same binding effect as a unanimous vote.

We conclude that the board was authorized by statute to employ the plaintiffs as attorneys to render the board professional services; that such statutory authority permitted the employment of more than one attorney if the board so desired; and the approval by the board of the claims of plaintiffs for fees and expenses by appropriate resolutions after the services were performed constituted a binding obligation on the board and the landowners of the drainage district which the board represented.

We further conclude that these claims so approved have substantially the same standing as obligations of the board as the claims for the borrowed money considered in the earlier case, and that it is not necessary that these claims be reduced to judgment before a peremptory writ of mandamus will issue when the project is abandoned.

What was said in the earlier part of this opinion with reference to the power of the defendant board to make and cause to be extended a levy to cover the claim for money borrowed will apply here to these claims for attorney fees and expenses with equal force.

The motions to quash the alternative writ in each of the two cases considered in this opinion should be overruled and the writ in each case allowed.

It is so ordered.

HARVEY, J.: I concur in the decision in case No. 28,382. I dissent from the decision in case No. 29,140. This is an action to re-

cover on contracts of employment, and jurisdiction is in the district court. I think the original jurisdiction of this court in mandamus does not include an action of this kind, and that the motion to quash should have been sustained.

JOCHEMS, J., concurs and dissents as does HARVEY, J.