No. 34,148

THE STATE OF KANSAS, ex rel. GUY E. WARD, County Attorney of Republic County, *Appellee,* v. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF REPUBLIC, *Appellant.*

(82 P. 2d 84)

Opinion filed August 22, 1938.

*W. D. Vance* and *Fred Emery,* both of Belleville, for the appellant.
*Guy E. Ward,* county attorney, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This was an action for a declaratory judgment seeking a construction of G. S. 1935, 19-1503, as affected by the cash-basis law, the budget law and the tax-limitation law, as applied to the facts alleged in the petition and conceded to be correct. As these statutes are interpreted by plaintiff, it was entitled to a decree enjoining defendant from proceeding as it proposes to do in financing the building of a courthouse and jail to replace a courthouse destroyed by fire; as interpreted by defendant such a decree was not authorized. The trial court agreed with plaintiff's construction of the statutes. Defendant has appealed.

The pertinent facts are not controverted and may be summarized as follows: Republic county is and for many years has been one of the organized counties of the state. It has a population of between 14,000 and 15,000 and property of the assessed value of about $27,-000,000. For many years it has had a courthouse and jail situated on a site owned by the county at Belleville, the county seat. On April 1, 1938, the courthouse was destroyed by fire. The jail is old, insanitary and unsuitable for present needs. Since the destruction

of the courthouse by fire the county officers have occupied temporarily various office rooms rented by the county. These are inconvenient for the general public and unsuitable for the safekeeping of county records. The county collected more than $25,000 in insurance on the burned building, which it has segregated and placed in a special fund to be used in constructing a new courthouse and jail. A real necessity exists for the constructing of the new courthouse as soon as that can be done legally. The county has no outstanding indebtedness represented by bonds or time warrants and has ample funds on hand to pay current expenses. Prior to the making of certain orders of the board of county commissioners, soon to be mentioned, valid petitions signed by more than one fourth of the bona fide resident taxpayers of the county (about 35 percent of them) were presented to the board of commissioners requesting it to proceed, without an election and vote of the electors of the county, to erect a courthouse for the county and for the cost thereof to the county to be raised and provided by a special tax levied as provided by law and not by the issuance of bonds. These petitions were approved by defendant's board of commissioners. Defendant, heretofore by due action of record, has determined that a necessity exists for the construction of a new courthouse on the site owned by it at the county seat, with vaults and rooms for the various county officers and a suitable jail, and in like manner has determined by its action, properly of record, that the actual cost of such structure will approximate the sum of $243,470. The defendant applied to and received from the PWA a grant of funds in the sum of $109,561.50 as aid to be used in paying the cost of such building, leaving a balance to be paid by defendant of $133,908.50. Defendant is proceeding to and intends to use its surplus funds derived from insurance on the building destroyed, now segregated and set apart in a special building fund, toward the payment of the cost of such new building, and to raise and provide the balance of such costs, approximately $100,-000, more or less, by the issuance and sale of interest-bearing anticipation warrants to be issued and sold as the work on the building progresses and as funds from that source are required for the cost thereof, such warrants to bear interest at the rate of three percent per annum, or less, and all to be payable and retired within five years. Defendant further intends to and is in the process of making a special tax levy upon all the taxable property within the county for the purpose of providing a sinking fund to pay and retire

such warrants, the levy therefor not to exceed one mill on the dollar annually for the years 1938 through 1942, which levy would be sufficient to pay all such warrants with interest. Provision has not been made and cannot be made in the 1938 budget of the county to pay such warrants unless the defendant is permitted to levy a special tax therefor, in excess of the aggregate tax levy permitted by law for general county purposes.

Plaintiff contends that our cash-basis law, specifically G. S. 1935, 10-1112, 10-1113, 10-1114, 10-1115, 10-1119; our budget law, specifically G. S. 1935, 79-2935, and our tax-limitation law, G. S. 1935, 79-1947, make impossible the action proposed and intended by defendant, respecting the issuance and sale of interest-bearing anticipation warrants, and the levy of the special tax to procure bonds to pay such warrants with interest.

Defendant contends it is specifically authorized by G. S. 1935, 19-1503, 19-1504, 19-1505, to proceed as it proposes and intends to do, and further contends it is within the specific exceptions of the cash-basis law, G. S. 1935, 10-1116; of G. S. 1935, 79-1963, pertaining to tax limitations, and the proviso of G. S. 1935, 79-2935, being a part of the budget law.

In deciding for plaintiff and against defendant, the trial court declared their rights to be as follows:

"That no such emergency exists under the admitted facts in this case, as creates an exception to the provisions of what is commonly known as the cash-basis law and the budget law of the state of Kansas, or any other pertinent provision of law relating to the subject-matter of this action.

"That the defendant board is not authorized, under the facts admitted herein, proceeding under section 19-1503 of the General Statutes of Kansas for 1935, to levy a special tax or to issue, sell or dispose of time or anticipation warrants of said county of Republic for the purpose of making payment of any part of the cost of erection of the courthouse in question.

"That the last stated declaration of right exists by reason of fact that the provisions of the cash-basis law, the budget law and the general tax-limitation law pleaded and set forth in the petition herein, prohibit the levy of such tax and the issuance, sale and disposal of such warrants."

We turn now to the consideration of the statutes involved.. To procure the funds necessary to construct the new building, after applying the money received from insurance and the federal aid, the county proceeded, and proposes further to proceed under the latter part of G. S. 1935, 19-1503. This section reads:

"The board of county commissioners of any county may determine, in their discretion, when the erection of any permanent building or buildings for

the use of the county is necessary, and they shall also determine the cost of the erection thereof, and the same shall be entered on the journal, but no tax shall be levied, bonds issued or other obligations incurred on account of the erection of such building or buildings until after the question has been submitted to the electors of said county at some general election or at a special election held for that purpose. When, however, the assessed valuation of the property in any county shall be in excess of six million dollars, and said county shall have in its treasury a sum not less than twenty-five thousand dollars belonging to said county, over and above its indebtedness, and the county commissioners are petitioned therefor by one fourth of the bona fide resident taxpayers of said county, they shall, without submitting the question to the electors of such county, levy an annual tax for the purpose of building or repairing any county building at the county seat of any county, said tax not to exceed two mills on the dollar upon the taxable property subject to taxation in said county in any one year, and said tax shall not be levied for a longer period than five years, and the county commissioners are further authorized and empowered to use any surplus funds that may be in the treasury belonging to said county in payment for the erection or repairing of said building."

And that portion of G. S. 1935, 19-1505, which reads:

". . . The board of county commissioners are hereby authorized and empowered to anticipate the moneys arising from said tax by drawing warrants on the fund aforesaid, which warrants shall designate on their face the particular fund whereon they are drawn, shall bear interest at a rate not to exceed six percent per annum, and shall not be due until money is accumulated in said fund for the payment thereof. They shall be numbered consecutively in the order in which they are issued, and it shall be the duty of the county clerk, whenever five hundred or more dollars shall accumulate in said fund, to make a call for said warrants, as provided by law, in the order in which they are issued; and if the warrants so called shall not be presented for payment within thirty days from the date of said call, then interest on such warrants shall cease and determine."

G. S. 1935, 19-1503, 19-1504 and 19-1505, are sections 1, 2 and 3 of chapter 141 of the Laws of 1907, except that the first of the sections was amended in 1909 (Laws 1909, ch. 99) and later revised "to conform to the general bond sections" by the commissioners who revised our statutes in 1923. (See report of December, 1922, of Commission to Revise the General Statutes, p. 70.) The result of this amendment and revision was to leave the section, so far as it pertains to any questions involved in this case, the same as it was when enacted in 1907. This act of 1907 amended sections 1624, 1625 and 1626 of the General Statutes of 1901. The first of these prohibited the county commissioners from building any permanent county building and levying a tax therefor without an affirmative vote of the people at an election at which the question was sub-

mitted; the next section prescribed the notice which should be given for such an election, and the next pertained to the manner of conducting the election, the canvass and return of the vote, and the effect thereof. The act of 1907 retained in the first sentence of the first section the general requirement of an election, and in the second sentence authorized counties which came within a certain classification—having property of an assessed value of six million dollars, no bonded debt, and as much as $25,000 of surplus funds—to act upon the petition of one fourth of the bona fide resident taxpayers, dispensing with an election; the next two sections amended the old sections so as to conform more nearly to our revised election laws, and particularized the notice to be given the questions to be submitted, the form of the ballot, the conduct of the election, the canvass and return of the vote and the effect or results to follow. These last two sections remain unchanged and are now G. S. 1935, 19-1504 and 19-1505.

Soon after the act of 1907 became effective the county commissioners of Butler county undertook to act under the latter portion of section 1. The county had property of the assessed value of more than six million dollars; had no bonded indebtedness and had a surplus fund of more than $25,000. Its board of commissioners determined that a new courthouse was necessary and should be built at a cost of $60,000. There was presented to the board of commissioners petitions of more than one fourth of the bona fide resident taxpayers of the county to proceed to build the courthouse, without an election or vote of the electors, and to levy a special tax therefor without issuing bonds. The board of commissioners were proceeding to let the contract for the building, to levy a special tax, and to issue anticipation warrants to be paid from the proceeds of the tax, when an action was brought in the name of the state, on the relation of the attorney general, to enjoin them from doing so, and from an adverse judgment the plaintiff appealed to this court and contended the act was invalid. This court held the act to be valid (*State v. Butler County*, 77 Kan. 527, 94 Pac. 1004) and construed the act so far as it was necessary to do so in that case. Among other things the court said:

"We think . . . the law contemplates that when a petition is presented. signed by one fourth of the resident taxpayers, the duties and powers of the board are the same as though the question had been submitted to a vote of the electors and carried." (p. 532.)

The citator discloses that repeatedly this case has been cited with approval, although not directly on this point. We are convinced, however, of the soundness of the language last quoted. Indeed we are unable to see how such a petition and the action of the board of commissioners thereon could have any effect other than that tantamount to a favorable vote at an election to construct the building by a special tax levy. At the argument of this case the language above quoted from the opinion was referred to as dictum. We do not so regard it. We have read the original record and briefs in that case and are convinced the point covered by the language quoted was essential to a decision of the case by this court, even though no separate paragraph of the syllabus was made of it.

Upon the authority of *State v. Butler County,* supra, and the language quoted from the opinion, and upon our own independent consideration of the question, we hold that the petitions, duly presented, considered and acted upon, as authorized by G. S. 1935, 19-1503, conferred upon the board of county commissioners all the power and authority to proceed to construct the building, use the funds on hand available for that purpose and such federal aid· as it may receive, and for the balance of the costs to levy a special tax at a rate of not more than two mills on the dollar for a period of not more than five years and to issue its anticipation warrants to be paid with the proceeds of the tax, all as fully and as completely as could have been done if an election had been held on those questions and a favorable vote returned. In other words, when the petitions are duly presented, considered and favorably acted upon, they take the place of the election, otherwise provided for, and are the equivalent in law of such an election.

The statement of facts discloses, indeed it is conceded, that defendant is proceeding properly under G. S. 1935, 19-1503, 19-1505, and that it is authorized to do so unless such authority has been negatived by subsequent legislation, to which plaintiff refers.

The cash-basis law (Laws 1933, ch. 319, G. S. 1935, 10-1101 to 10-1122), the budget law (Laws 1933, ch. 316, G. S. 1935, 79-2925 to 79-2937) and the tax-limitation law (Laws 1933, ch. 309; G. S. 1935, 79-1945 to 79-1970) were enacted at the same session of the legislature. While dealing with different subjects they have a common, basic purpose, namely, the systematical, intelligent and economical administration of the financial affairs of municipalities and other taxing subdivisions of the state, so as to avoid waste and

extravagance and yet permit such units of government to function so as to supply the governmental wants and needs of the people. Singly and collectively the statutes have been construed and applied by this court in many cases, which may be found in the annotations. The statutes are meritorious; their beneficial effects frequently have been demonstrated. We have no disposition to destroy or to weaken them or any of our decisions pertaining to them. None of them specifically repeals G. S. 1935, 19-1503, or any part of it, neither does any of them or all of them necessarily effect such repeal by implication. Their fundamental purpose is in harmony with G. S. 1935, 19-1503, and particularly that part of it pertaining to the filing and action to be taken on taxpayers' petitions, for when the county is within the class authorizing it to act upon such petitions, it is the more economical procedure, since it saves the expense of an election and also saves interest, as the anticipation warrants are issued only as needed as the work progresses. In the argument of this case before us it was conceded this is the more economical procedure. It would be a strange result if statutes designed to effect economies in the administration of the financial affairs of counties and other taxing subdivisions of the state should force the use of the more expensive of two methods of procedure respecting a particular matter. In an effort to avoid such an anomalous result the legislature wrote into each of these statutes sections stating to what they do not apply. For example:

In the cash-basis law: "The provisions of this act shall not apply to contracts and indebtedness created, the payment for which has been authorized by a vote of the electors of the municipality, or where provision has been made for payment by the issuance of bonds, as provided by law. . . ." (Laws 1933, ch. 319, § 16; G. S. 1935, 10-1116.)

In the budget law: ". . . *Provided,* the provisions of this section shall not apply to contracts and indebtedness created, the payment for which has been authorized by a vote of the electors of the municipality or for casualties or emergencies or where provision has been made for payment by the issuance of bonds." (Laws 1933, ch. 316, § 11; G. S. 1935, 79-2935.)

In the tax-limitation law: "No limitation imposed by this act shall in any wise apply to or in any way limit any levy which is authorized by statute for the purpose of creating sinking and interest funds necessary to liquidate at maturity the principal and

interest of any indebtedness authorized by law. . . ." (Laws 1933, ch. 309, § 19; G. S. 1935, 79-1963.)

Plaintiff argues that the procedure taken and proposed to be taken by defendant cannot come within the exceptions to the cash-basis law and the budget law above quoted, because there was no vote of the electors and no bonds are to be issued. It is conceded these excepting statutes would apply, if a vote of the electors had been taken which authorized the issuance of bonds. In view of the fact that the taxpayers' petition, authorized by G. S. 1935, 19-1503, is the alternative and a substitute for the vote of the electors, and the anticipation warrants for the bonds, and in view of the fundamental purpose of economy which permeates all these statutes, we think this contemplation places too narrow a construction on these quoted provisions of the cash-basis law and the budget law.

While, generally speaking, ordinary words used in a statute should be given their ordinary meaning, the more fundamental rule is that "in determining the legislative intent in enacting a statute the general purpose of the legislature as shown by the statute as a whole, is of primary importance. Words, phrases and figures used in the statute should be construed in harmony with that general purpose." (*State, ex rel., v. Gleason,* 148 Kan. 1, 14, 79 P. 2d 911, and see authorities there cited.) Here, as we have seen, the general purpose of all of the statutes is the same, economy and systematic efficiency in the administration of the financial affairs of governmental subdivisions of the state. The legislature of 1933 had an enormous task in framing the cash-basis, the budget and the tax-limitation laws. Literally hundreds of previous statutes and practices which had developed over many years in the varied governmental units had to be studied and general statutes formulated in harmony with the fundamental purpose of economy and efficiency of the administration of governmental units. Certainly there was no intention to repeal by implication the more economical alternative method of financing the construction of public buildings by taxpayers' petitions and anticipation warrants rather than by an election and bond issue, provided by G. S. 1935, 19-1503, 19-1505. Repeals by implication are not favored. (*Wolff v. Rife,* 140 Kan. 584, 38 P. 2d 102.)

The exception to the tax-limitation law (G. S. 1935, 79-1963) is not confined to bonds authorized by the vote of electors, but applies to "any levy which is authorized by statute for the purpose of creating sinking and interest funds necessary to liquidate at ma-

turity, the principal and interest of any indebtedness authorized by law." This wording places no limitation upon the special tax defendant proposes to levy, for the levy is made to create a fund to pay the warrants with interest, authorized by law to be issued. This is properly denominated a sinking fund. In *Brooks v. Town of Brooklyn*, 146 Ia. 136, 124 N. W. 868, it was held:

"A sinking-fund tax is raised to be applied to the payment of the principal and interest of a public loan ,or obligation." (p. 146.)

See, also, *Murphy v. Spokane*, 64 Wash. 681, 117 Pac. 476; *Levy v. McClellan*, 196 N. Y. 178, 89 N. E. 569, 573; *Tennessee Bond Cases*, 114 U. S. 663, 29 L. Ed. 281, 5 S. Ct. 974, 1098.

Upon the whole, we are convinced that by the enactment of the cash-basis law, the budget law and the tax-limitation law, the legislature did not intend to repeal, and did not repeal, the provisions of G. S. 1935, 19-1503, and 19-1505, under which defendant is proceeding, and that this procedure fairly comes within the express exceptions of those acts above quoted.

In the argument before us there was some discussion of the trial court's first declaration of rights respecting the existence of an emergency. Normally, whether an emergency exists respecting governmental affairs is a matter to be determined by the officials charged with the management of such affairs. Being within the sound discretion of those officials, ordinarily it is a matter not within the purview of the courts. (*Kansas Power Co. v. City of Washington*, 145 Kan. 962, 965, 967, 67 P. 2d 1095.) However, we do not regard the question as being important here. Apparently, what the trial court had in mind and really held was that the situation disclosed by the agreed facts does not show the existence of an "emergency" as that term is defined in certain sections of the cash-basis law and the budget law, which provisions we have not quoted. We find it unnecessary to review the holding of the trial court on that point. If the provisions of G. S. 1935, 19-1503 and 19-1505, under which defendant is proceeding, are still in force, as we hold, it is not material whether the facts disclose an "emergency" exists as that term is used or defined in the cash-basis law or the budget law.

This case is a good illustration of the beneficial use of our act relating to declaratory judgments, G. S. 1935, 60-3127 to 60-3132, when counsel and the courts coöperate for the early consideration and determination of a question of public importance concerning which there is an actual controversy. This action, framed for an

injunction but actually seeking a construction of statutes and a declaration of rights, was filed and heard in the district court, appealed to this court, advanced, argued and decided, all within a week. Counsel acted prudently in bringing the action in order that the validity of the proceeding being taken by defendant might be determined at an early date.

The judgment of the trial court is reversed with directions to deny an injunction predicated upon the allegations of the petition and to enter a decree in harmony with the views expressed in this opinion.

HUTCHISON and WEDELL, JJ., not participating.