## No. 37,777

R. L. McCall, E. E. Snell, George E. Dodson, C. W. Thomalson and N. H. Rayl, Board of Supervisors of Little Caney River Drainage District, *Plaintiffs*, v. Claudie Goode, County Treasurer of Chautauqua County, and A. M. Eckelberry, County Treasurer of Montgomery County, *Defendants*, and William H. Burgwin, Althea Louise Bowen, Art Henderson, Robert S. Deal, Coleman S. Boggs, Della Fugua, Ellis Patterson, George Doye, J. S. Shoemaker and John McClasky, *Intervenors*.

(212 P. 2d 209)

Opinion filed December 10, 1949.

*R. O. Robbins,* of Sedan, argued the cause, and was on the briefs for the plaintiffs.

*Roy Kirby,* county attorney, argued the cause, and *Glenn T. Crossan,* deputy county attorney, was with him on the briefs for the defendant, A. M. Eckelberry.

*John F. O'Brien,* of Independence, and *T. D. Hampson,* of Fredonia, argued the cause, and *O. L. O'Brien,* of Independence, was with them on the briefs for the intervenors.

The opinion of the court was delivered by

WEDELL, J.: This is an original mandamus action instituted by members of the board of supervisors of Little Caney River Drainage District against the county treasurers of Montgomery and Chautauqua counties.

The motion for the writ prays for an order directing the county treasurer of Montgomery county to pay over to the county treasurer of Chautauqua county certain sums of money collected by the former as protested and as unprotested assessments on land in the district; to direct the county treasurer of Chautauqua county upon receipt of such funds to credit them, and also the moneys held by him as protested assessments, to the account of the plaintiff drainage district in order to make them subject to warrants to be drawn thereon by the plaintiff board and to restrain the defendants from refunding any such funds to the taxpayers or other persons pending a decision in this court.

The two defendant county treasurers really are not contentious parties but, as public officials, are merely refusing to act until their official duties in the premises are determined. Various landowners in the district have intervened in opposition to the tax or assessment contending it is wholly illegal and void. As indicated some of them paid the assessments under protest while others paid them, or parts thereof, without protest. For present purposes we need not determine the sufficiency of the protests.

In addition to nine complaining landowners the engineer who was employed by the drainage district board to make a survey, and did so, has intervened and seeks to recover compensation for services rendered.

The action is being tried on an agreed statement of facts. It is unnecessary to set forth all of them in detail. In view of the conclusion we have reached on the principal legal questions involved many of the detailed facts become immaterial. The substance of the material facts agreed upon is appended hereto and made a part hereof.

The principal contention of the intervening landowners is the assessment made (they choose to call it a tax) on the land in the drainage district is illegal and void in that it violates the budget law (G. S. 1935, 79-2925 to 79-2937) and the cash-basis law (G. S. 1935, 10-1101 to 10-1122) and amendments thereof.

On the other hand the drainage board and the intervenor, its engineer, contend those acts enacted in 1933 are not applicable, that they did not expressly repeal the earlier drainage district act here involved and in nowise repealed provisions of that act by implication.

The last contention was in principle upheld by this court in a well reasoned opinion involving the building of a courthouse in Republic county under provisions of another law, G. S. 1935, 19-1503, 19-505, pursuant to a petition of resident taxpayers. It was held the provision of the law authorizing the levy of a special tax to procure funds for that purpose was not expressly repealed or by implication rendered inoperative by provisions of the cash-basis law, the budget law or the tax-limitation law of 1933. (*State, ex rel., v. Republic County Comm'rs,* 148 Kan. 376, 82 P. 2d 84.) Moreover, it was expressly held in that case the authority to build the courthouse by means of the special tax came clearly within the exceptions of the budget law, the cash-basis law and the tax-limitation law. (p. 382, 384.) The analysis of the subject was thorough. What was there said need not be repeated here but is incorporated herein by reference.

Repeals by implication are, of course, never favored (*Wolff v. Rife,* 140 Kan. 584, 38 P. 2d 102; *State, ex rel., v. Republic County Comm'rs,* supra, p. 383.) No sound reason is suggested or appears to us for holding the decision and reasoning in the Republic county case is not equally applicable and controlling here. Having so concluded we need not pursue the further question argued by the parties whether it would be possible for the drainage district to function under the budget, cash-basis or tax-limitation laws.

It is well understood an assessment against property by reason of benefits to be derived from an improvement is not in the constitutional sense a tax. Although it has been said assessments for local improvements form an important part of the system of taxation such assessments differ from general taxes. An assessment, as distinguished from other kinds of taxation, is that special and local imposition upon the property in the immediate vicinity of municipal improvements, which is necessary to pay for the improvement, and is laid with reference to the special benefit which the property is supposed to have derived therefrom. (5 McQuillin on Municipal Corporations, 2d ed. rev., § 2165; *State ex rel. Drainage District v. Thompson* 328 Mo. 728, 41 S. W. 2d 941; *Eubank v. City of Ft. Worth,* Tex. Civ. App., 173 S. W. 1003; *City of Kalispell v. School*

*District No. 5,* 45 Mont. 221, 122 Pac. 742; *Santa Clara Valley L. Co. v. Meehan,* 62 Cal. App. 531, 217 Pac. 787.)

The assessments here are made in contemplation of benefits that will accrue to each tract of land in the district by reason of the improvements. (G. S. 1935, 24-609.) All provisions of the drainage law contained in the General Statutes of 1935 will be designated by sections.

It is true consideration of the engineer's report by the drainage board resulted in disapproval of the particular project submitted by him. It is, however, also stipulated the drainage district has not been disorganized as it is possible to do under an amendment enacted in 1929. (Section 24-647.) The result is for our present purposes the district must be regarded as a going concern. Section 24-609 requires the board, it has no alternative in the matter, to have a topographical survey made of the district by some competent engineer and to have him assess the benefits accruing to each tract of land. The board employed an engineer and he performed.

The drainage board was also authorized to employ an attorney to represent and advise it. (Sections 24-608, 24-614.) Section 24-617 implies the need for an attorney. Section 24-633 authorizes the board to compensate its attorney, engineer, other officers and employees of the district for services rendered and expenses incurred. The board employed an attorney. He performed. It has been held an attorney's compensation may be recovered from the board in a mandamus action. (G. S. 1935, 60-1710; *Fidelity Nat'l Bank and Trust Co. v. Morris,* 130 Kan. 290, 291, 296, 286 Pac. 206.)

The only remaining question in this case is whether the indebtedness created by the drainage board is to be paid on the basis of the assessments made on each tract of land pursuant to the drainage law or whether it is to be paid by a levy made in some other manner. The first chapter of the last cited drainage case is reported in 127 Kan. 283, 273 Pac. 426. In the first case the county clerk was not a party. He was made a party defendant in the second case and was ordered to make a real-estate assessment of the drainage district and extend the levy, pursuant to provisions of G. S. 1935, 79-408, and other statutes pertinent thereto. It, therefore, will be observed the levy was not made upon the basis of assessments made under the drainage act but on the basis of the value of the real estate in the drainage district. The reason for requiring the county

clerk to make the assessment on the basis of the value of the real estate was that the drainage district there involved was an *abandoned* drainage district. It was no longer a going concern.

In the instant case the district is not abandoned. Here the levy must be made pursuant to the drainage district law (section 24-618) which prescribes the plan of levy for a district that is a going concern. (*Fidelity Nat'l Bank and Trust Co. v. Morris,* 130 Kan. 290, 293, 286 Pac. 206.)

The intervening landowners further contend the assessments are illegal and void for the reason the plaintiff board has acted arbitrarily in refusing to disorganize the district as it is now permitted to do under the 1929 amendment (section 24-647) but for which there was no provision when the previously cited drainage district cases were decided. This is not an action to compel the board to disorganize the drainage district. The facts which may have prompted the board not to disorganize it are not now before us.

The intervening landowners further argue they have received no benefits from the project and will receive none. We are, of course, not permitted to speculate concerning possible future benefits. Our consideration must be limited to existing facts. It was the landowners of the district who brought this drainage district into being. It is their organization. It is not claimed the plaintiff board incurred any indebtedness it was not directed or authorized by law to incur. In other words what was done, even if it culminated in nothing more than an unsuccessful experiment as to a particular project, was in legal contemplation done by the landowners themselves and for their benefit. So long as the district remains a going concern it may yet take advantage of what it has learned for the benefit of the landowners. We, therefore, cannot say the landowners have obtained no benefits. The assessments made pursuant to the drainage district law are not illegal and should be collected in accordance with the provisions of that law.

It is the judgment of this court that the writ issue as prayed for by the drainage district, previously set forth herein, and the costs of this action be taxed to the drainage district.

It is the further judgment of the court that counsel for the drainage district recover the sum of $500.00 as compensation for services and expenses incurred in the instant action in this court, the same to be taxed as costs of the action.

The writ is allowed.

## Agreed Statement of Facts

The plaintiff district was fully organized September 4, 1946, as provided by article 6, chapter 24 (G. S. 1935, 24-601 to 24-653) and embraced the land of all intervenors; the larger portion of the drainage district is situated in Chautauqua county; pursuant to section 24-605 the board employed the firm of Burgwin & Geiger (later superseded by William H. Burgwin) to make a topographical survey, classifications, assessment of benefits, maps, profiles, etc., as provided for in section 24-609; the engineers filed their report and a hearing was held thereon, as provided in section 24-613, on April 20, 1948; the board decided it should reject the report and the proposed flood control works as they had been planned; the report provided no flood protection work should be done on certain lands (described) and no assessment for work in other portions of the district should be made against the excluded land; no work was completed or started on any actual project and no benefits were provided for any landowners, except whatever benefits were received by them from the survey, the report of the engineer and the rejection of the report and determination to abandon the project; on July 28, 1948, the supervisors of the district adopted a budget; the notice of adoption and the certification and filing of the budget were in proper form; that was the first time any budget had been adopted for the district.

Paragraphs 9 and 10 of the stipulation read:

"9. It is further agreed that said budget was adopted for the purpose of raising the sum of $11,906.59 by assessment of sixty-one mills against all of the land in the district according to its valuation in money. Included in said sum of $11,906.59 was the sum of $5,400 for the payment of a note in the sum of $5,000 and interest of $400 thereon, which note was given to C. W. Powell of Havana, Kan., on Jan. 25, 1947, for money borrowed by the board of supervisors of said C. W. Powell. That the budget provides for the payment of $6,384.44 for the balance due on the engineers' contract fee. That said budget also provided for the sum of $400 to pay for attorneys' service during the year 1949 in the closing of the business of said district and the sum of $288 for office supplies and miscellaneous expenses in 1949. It is further agreed that said budget for the year 1949 was adopted for the purpose of raising funds to meet obligations incurred by said board of supervisors for said drainage district

in the years 1946, 1947 and 1948, with the exception of said items of attorneys' fees and miscellaneous expenses. That in the event said budget and the levy of the tax provided for therein are valid, the only portion of the funds which will be raised which will be used for defraying expenses incurred in 1949, is said sum of $400 and the sum of $288, miscellaneous expenses. The entire balance of the funds so raised will be used to pay indebtedness incurred prior to July 28, 1949. That at the time of incurring said indebtedness and pledging the credit of the district no budget had been adopted or proposed by said district, but that the contracts and indebtedness created were not authorized by vote of the electors. That no provision has been made for the payment of said indebtedness by issue of bonds as provided by law. That no provision has been made for payment of said obligations by issuance of warrants authorized by the Commission in accordance with the provisions of Section 79-2938 and 79-2939, 1947 Supplement to the General Statutes of Kansas.

"10. That upon the receipt of said budget and certificate the county clerk of Chautauqua County, Kansas, spread the levy as certified upon the real estate located in Chautauqua County, Kansas, included in said drainage district, but the county treasurer of Montgomery County, Kansas, refused to spread said levy upon the part of said real estate located in Montgomery County, Kansas. An action was then brought in the district court of Montgomery County, Kansas, by the said board of supervisors, as plaintiffs, against the county clerk of Montgomery County, Kansas, as defendant, and as a result thereof a judgment was entered in said suit by the district court of Montgomery County, Kansas, by which a peremptory writ of mandamus was issued requiring said county clerk of Montgomery county to spread said levy as certified in said budget, after which said county clerk spread said levy in conformity with said writ of mandamus upon the real estate included in said drainage district, which was located in Montgomery County, Kansas."

Thereafter the stipulation, in substance, contains admissions concerning certain other facts as follows: A detailed statement of assessments intervenors have paid either without or under protest; a narrative of a hearing before the state commission of revenue and taxation on May 3, 1949, touching the validity of intervenors' protests; the order of that commission; the demand of the plaintiff board on the county treasurer of Montgomery county and his refusal to pay over to the county treasurer of Chautauqua county

funds in his hands; a demand on the latter treasurer to credit certain funds to the drainage district; the specific amounts of money held by the county treasurer of each county; that no written petition for the disorganization of the drainage district has been filed pursuant to the provisions of section 24-647.