The state's appeal on the questions reserved is sustained.

No. 38,968

THE STATE OF KANSAS, ex rel. HAROLD R. FATZER, as Attorney General Thereof, *Plaintiff*, v. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF LYON, STATE OF KANSAS: TED NEWCOMER, as Commissioner of the First Commissioner District, E. H. FOWLER, as Commissioner of the Second Commissioner District, and WALTER LARKIN, as Commissioner of the Third Commissioner District, all of and for Lyon County, Kansas, *Defendants*.

(250 P. 2d 556)

Opinion filed November 20, 1952.

*Clarence V. Beck* and *Earl B. Shurtz*, both of Emporia, argued the cause, and *Harold R. Fatzer*, attorney general, and *Paul E. Wilson*, assistant attorney general, both of Topeka, were with them on the briefs for the plaintiff.

*Everett E. Steerman* and *George Allred*, both of Emporia, argued the cause, and *Champ Graham*, County Attorney of Lyon county, was with them on the briefs for the defendants.

The opinion of the court was delivered by

HARVEY, C. J.: This is an original action in quo warranto by which plaintiff questions the authority of defendants to do certain acts in connection with the building of a new courthouse in Lyon county. The case is presented to the court upon the facts agreed to in the pleadings and stipulated in writing. Defendants are not charged with fraud. The pertinent facts may be stated as follows:

In 1943 our legislature passed an act (Ch. 137, Laws 1943) au-

thorizing the board of county commissioners of certain counties, including Lyon county, to levy an annual tax to create a fund "for the purpose of creating a building fund to be used in the building of a courthouse," and outlined the steps to be taken. Under the authority of that statute the then board of county commissioners of Lyon county, on July 23, 1943, adopted a resolution which recited that the board "is of the opinion that the present courthouse building is antiquated, inadequate, a fire hazard, and not susceptible of remodeling or reconditioning." Reference was made to the statute (Ch. 137, Laws 1943) and it was resolved that "a fund in the sum of $250,000, . . . be . . . created, for the purpose of erecting, equipping and furnishing of a courthouse at Emporia," and an annual tax of one mill was levied upon the taxable property in the county for a period of not to exceed ten years. This resolution was duly published in the official county paper. The statute authorized electors opposed to the levy to file with the county clerk written protests within a stated time, and if as many as twenty-five percent of the electors filed such protests the question of making a levy should be submitted to the voters of the county at the next general election. No such protests were filed. The tax authorized by the resolution was collected for the years 1943, 1944 and 1945, creating a fund of $127,645 by March 16, 1946.

Our legislature of 1945 enacted a statute (Ch. 165, Laws 1945), now G. S. 1949, 19-1569, 1570, 1571, 1572) which repealed Chapter 137, Laws of 1943. On March 16, 1946, the then board of county commissioners adopted a resolution which again recited that the board "is of the opinion that the present courthouse building is antiquated and inadequate, a fire hazard and not suitable to remodel or recondition." Reference was made to the previous resolution of July 23, 1943, and stated the amount that had been raised by the tax levy under that resolution, recited the enactment of Chapter 165, Laws of 1945, and created a building fund of $400,000 plus any accumulated interest thereon "for the purpose of acquiring a site of and the building, equipping and furnishing of a courthouse and jail at Emporia, Kansas, said sum to include the sum of $127,645.00 now present in said Building Fund." A one mill tax was levied upon the taxable tangible property of the county until the building fund would amount to $400,000, the tax not to extend over a period of more than ten years. No protests were filed by the electors of Lyon county, and under it a tax was levied for the years 1946 to

1951, both included, which increased the fund to approximately $400,000.

Under date of October 13, 1950, the then board of county commissioners adopted a resolution submitting to the electors the following proposition:

"Shall the Board of County Commissioners of Lyon County, Kansas, sell the present courthouse and county jail and the land upon which such buildings are located, as provided by law,"

Due notice of this proposal was given to the electors and the election held thereon at the general election of November 7, 1950. The vote in favor of the proposition was 3,464 and the vote against the proposition was 6,931, so the proposition was defeated. Under date of May 11, 1951, the then board of county commissioners passed a resolution similar to the one of March 16, 1946, but increasing the sum of the building fund to $490,000. So many protests were filed against that resolution that it was not submitted to a vote. Under date of April 8, 1950, the then board of county commissioners entered into a contract with Brinkman & Hagan, architects of Emporia, by which the architects were to furnish a written report to the board concerning the feasibility of remodeling the present courthouse and to furnish estimates and preliminary plans for either the remodeling of the present courthouse or for a new courthouse building to be erected upon such site, as provided by the board of county commissioners. That report was made by the architects on May 21, 1952, and the board of county commissioners adopted a resolution authorizing and directing the architects to proceed with detailed plans for building a new courthouse and jail on the site of the present courthouse. Preliminary plans were furnished, and under date of July 29, 1952, the board adopted a resolution authorizing the architects to proceed with final plans and specifications in accordance with the preliminary drawing which had been submitted and approved. Under date of August 22, 1952, the board of county commissioners (two members) adopted a resolution which summarized the previous resolutions and the amount of money that had been raised thereunder and the further fact that on that date the board of county commissioners entered into a contract with the Masonic Lodge of Emporia to rent space in the Masonic building suitable for temporary office space for the courthouse offices during the construction of the new courthouse at a rental of $1,000 per month, commencing No-

vember 1, 1952, and to extend for a period of eighteen months, with the option to extend the time to the completion of the new courthouse not to exceed an additional eighteen months. That resolution ratified, confirmed and approved all that previously had been done pertaining to the construction of the courthouse and jail, and determined to give notice forthwith in a newspaper of general circulation in Lyon county, as provided for by law for bids for the construction of a new courthouse and jail on the present courthouse site in Emporia, as per final plans and specifications, and that a contract for the construction of a courthouse and jail be awarded at a public letting to the lowest responsible bidder, all as provided by statute. Such notice was duly published for three consecutive weeks beginning August 22, 1952. Defendants also caused to be published an advertisement for bids to be received in the office of the county clerk on October 16, 1952, for furnishing all materials and labor for the construction of the courthouse and jail on the present site in Emporia, with the usual information given in such an advertisement. This was first published in the Emporia *Gazette* on August 22, 1952. Also on August 22, 1952, defendants entered into a written contract with the Masonic bodies to lease the Masonic Temple for the use of the county offices for the period estimated as necessary for the building and completion of the courthouse and jail.

Speaking in a general way, the argument of plaintiff centers around two points: *First,* the authority of defendants to raze the present courthouse and erect a new building on the same site. *Second,* the authority of defendants to enter into and carry out the written lease agreement with the Masonic bodies for space for county offices until the new courthouse is ready for occupancy and to make certain expenditures in connection therewith.

In connection with the first of these questions plaintiff asks: Can defendants dispose of the present courthouse without "(1) Formal action by motion or resolution so to do? (2) Published public notice of the disposition of said building? (3) Submitting the disposition thereof to a vote of the electors and receiving their approval?" Answering these questions we point out that the resolution hereinbefore mentioned of July 23, 1943, contained the recital that the then board of county commissioners "is of the opinion that the present courthouse building is antiquated, inadequate, a fire hazard, and *not susceptible of remodeling or reconditioning*" (our

italics); that had a proper number of protests been made that resolution would have been submitted to the voters. Since no protests were made we regard the situation as being tantamount to an adoption of the resolution by the electors. (See, *State, ex rel., v. Republic County Comm'rs,* 148 Kan. 376, 378, 379, 82 P. 2d 84.) The same is true of the resolution adopted by the then board of county commissioners on March 16, 1946. So, on two occasions the electors in legal effect adopted the resolution of the board of county commissioners. They cannot now be heard to say that the proposition was not submitted to them. By their action upon another proposition as to whether the board of county commissioners should sell the courthouse, jail and grounds they voted two to one in the negative. So, by 1952 the county commissioners had $400,000 plus in the courthouse fund and an old courthouse which was "not susceptible of remodeling or reconditioning," and with no authority to sell it, or the jail or the grounds upon which the building stood. There seemed to be nothing to do but to raze the old courthouse and build a new one on the same site.

In this connection counsel for plaintiff cite and rely heavily upon G. S. 1949, 19-211 pertaining to the sale of county property. Shortly stated, that section gives the county commissioners authority to sell county property when in their judgment it should be sold or disposed of and where the value is less than $500. If the value of the property is over $500 and less than $5,000 the sale must be by the unanimous vote of the county commissioners, and not then until published notice for at least twenty days is given; and if the value of the property is more than $5,000 the proposition to sell should be submitted to the voters at an election. Assuming this statute as it relates to the proposed action of defendants is applicable, we take note of the fact that the parties hereto have stipulated "The present courthouse building, if sold or disposed of on condition that the building be removed, has no value." The necessity of razing the old courthouse in order to construct a new one was inherent in the resolution of July 23, 1943, and of March 16, 1946, if the building was to be constructed on the old site, which the electors did not give the county commissioners the right to sell when that question was submitted to them.

Money collected by taxes under the resolutions of July 23, 1943, and March 26, 1946, were invested by defendants as required by G. S. 1949, 19-1571. By October 16, 1952, this fund amounted to

$431,518.88. This may be increased somewhat by collections of back taxes or of interest. On that date bids were submitted by various contractors on the different parts of the project, as advertised, and defendants accepted bids, subject to the outcome of this action, upon all of the projects in the aggregate sum of $426,371. In the general contract for the construction of the building the contractors are to raze the present courthouse, the expense of which, estimated at $10,000, is to be paid out of the courthouse fund. There is no contention that the money on hand in the courthouse fund is not available for the purposes for which the money was collected.

The second principal question arises from the lease by the county commissioners of the Masonic building for county offices. Obviously the offices in the old courthouse could not be used while it was being razed, nor could those in the new one be used until the building was completed, or substantially so. It is the statutory duty of the county commissioners to furnish offices for the transaction of county business. (G. S. 1949, 19-104.) The county commissioners had authority to lease offices for the time necessary to raze the old courthouse and build a new one. (G. S. 1949, 19-212. *Third.*) Counsel for plaintiff specifically ask if the present county commissioners could make a lease for a term longer than the term of office of the present county commissioners. The answer is "yes." (See, *Edwards County Comm'rs v. Simmons,* 159 Kan. 41, Syl. 6 and pp. 53 to 55, 151 P. 2d 960.)

Complaint is made of certain conditions of the lease. Those are matters to be determined by the board of county commissioners and not by this court. We are asked if they could pay the Masonic bodies out of the courthouse fund. A sufficient answer to that question is that they are not paying it out of that fund. They are paying it out of the county general fund, which we are advised is adequate. But counsel for plaintiff say an item for that expenditure was not budgeted. Perhaps so, but we do not understand that items of the general fund are required to be budgeted. [See, G. S. 1949, 79-2925 (2).]

Plaintiff complains that defendants did not submit to a vote the resolution of May 11, 1951, to which a number of written protests were filed. If we assume, without so deciding, that the reasons given by defendants for not submitting the resolution to a vote were insufficient, what can we do about it now? Defendants

are not attempting to act under it. Had it been submitted and defeated it would not have destroyed the previous resolutions of July 23, 1943, and March 16, 1946, which had been adopted and under which they are acting. For the purpose of this action we think the resolution of May 11, 1951, may be disregarded, and we do so.

In a supplemental reply plaintiff points out, presumably for the purpose of criticising, a number of items alleged to have been omitted from the contracts tentatively approved by defendants on October 16, 1952. It is not contended on behalf of plaintiff that the items alleged to have been omitted in this contract rendered it void, hence the allegations of them present no question for this court to review. It is the function of the board of county commissioners to determine the details of the construction of the new courthouse. It is not the function of this court.

We think it is clear from the record that defendants in acquiring the courthouse fund and in their acts relating to the building of the new courthouse are not in violation of any of the laws of our state; and, further, that throughout the work they have acted in good faith, since they are not charged with fraud or acting otherwise.

Judgment is entered for defendants.